# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON, DIVISION

| | | |
|---|---|---|
| **CLAUDIA CASTILLO CORDOVA** | § | |
| **AND ARIANNIS PARRA,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DUNCAN BURCH, INC. d/b/a** | § | |
| **MICHAEL'S INTERNATIONAL** | § | **CIVIL ACTION NO.** |
| | § | **4:17-cv-00523** |
| **AND ALSO d/b/a CHICAS** | § | |
| **LOCAS, A TEXAS CORPORATION;** | § | |
| **BURCH MANAGEMENT, INC., A** | § | |
| **TEXAS CORPORATION; DUNCAN** | § | |
| **BURCH, AN INDIVIDUAL, AND DOES** | § | |
| **1-15** | § | |
| **Defendants.** | § | |

## DEFENDANTS, DUNCAN BURCH, INC d/b/a MICHAEL'S INTERNATIONAL AND ALSO d/b/a CHICAS LOCAS, A TEXAS CORPORATION, BURCH MANAGEMENT, INC., A TEXAS CORPORATION; and DUNCAN BURCH, AN INDIVIDUAL's NOTICE OF MOTION AND MOTION TO DISMISS OR STAY and TO COMPEL ARBITRATION

### [Fed. R. Civ. Proc. 12(B)(1) and (3); 9 U.S.C. Sec 2 *et seq.*]

To PLAINTIFFS:

PLEASE TAKE NOTICE that Defendants, Duncan Burch, Inc. d/b/a Michael's International and also d/b/a Chicas Locas, a Texas Corporation; Burch Management Company, Inc. (incorrectly referenced as Burch Management, Inc.), a Texas Corporation, and Duncan Burch, an individual (collectively "Defendants") hereby do move the Court for

an Order dismissing Plaintiffs, Claudia Castillo Cordova and Ariannis Parra's respective claims (and any other purported Plaintiff's, purported class member's, or collective member' claims) against Defendants for violation of the Fair Labor Standards Act ("FLSA"), including for Collective Action, or alternatively, to stay the action, and to compel participation by Plaintiffs in arbitration as required by the arbitration provisions contained in Plaintiffs' written License and Lease Agreement ("arbitration agreement") with Defendant Duncan Burch, Inc.(and applicable to claims against all other Defendants) pursuant to Fed. R. Civ. Proc. 12(B)(1) and (3); 9 U.S.C. Sec 2 *et seq.* This Motion is based on this Notice of Motion, the memorandum of Points and Authorities in support thereof, the Declaration of Steven William Craft and the exhibits attached thereto, the pleadings, records and papers on file herein, and on such further matters as may be presented to the Court.

Dated April 11, 2017                                     Respectfully submitted,

/s/ Charles J. Quaid
Charles J. Quaid
(Bar No. 164220500)
Quaid Farish LLC.
8150 No. Central Exp. Suite 600
Dallas, Texas 75206
214-373-9100
214-373-6688(telecopier)
E-mail: cquaid@quaidfarish.com
Attorneys for Defendants Duncan Burch,
Inc. d/b/a Michael's International and also
d/b/a Chicas Locas, a Texas Corporation;
Burch Management Company, Inc.
(incorrectly referenced as Burch
Management, Inc.), a Texas Corporation,
and Duncan Burch, an individual.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Plaintiffs, Claudia Castillo Cordova and Ariannis Parra, have sued Defendants,

Defendants, Duncan Burch, Inc. d/b/a Michael's International and also d/b/a Chicas  Locas,

a Texas Corporation; Burch Management Company,  Inc. (incorrectly referenced as Burch

Management, Inc.), a Texas Corporation, and Duncan Burch, an individual for alleged

violation of Fair Labor Standards Act ("FLSA"). Such claims arise from each Plaintiffs

relationship with Defendant, Duncan Burch, Inc., as an entertainer at Michael's International

/Chicas Locas (and against individual Defendants under an agency, "single enterprise" or

other theory derivative of their claims against the corporate Defendant, and arising from each

Plaintiffs relationship with Defendant, Duncan Burch, Inc., as an entertainer at Michael's

International/Chicas Locas). However, from inception of each Plaintiff's relationship with

any Defendant, Plaintiffs accepted and agreed to arbitrate all such claims as a condition of

that relationship. Each Plaintiff agreed to arbitrate any and all disputes arising out of each

said Plaintiff's relationship with Defendants as an entertainer. Defendants now seek to

enforce each Plaintiff's promise to arbitrate the dispute at bar pursuant to the written License

and Lease Agreement (arbitration agreement) and the Federal Arbitration Act (the "FAA")

which applies to that arbitration agreement. Each Plaintiff has no legally viable basis to

refuse to arbitrate her respective claims.

For the reasons discussed below, the enforceability of each written License and Lease

Agreement (arbitration agreement) is beyond dispute. Defendants respectfully ask this Court to (a) dismiss Plaintiffs' lawsuit, (b) enter an Order compelling each Plaintiff to submit their respective claims to separate arbitration, as each promised to do, and/or (c) stay this action pending completion of arbitration and entry of a respective judgment on the arbitrator's award.

## II. Plaintiffs' Agreement to Arbitrate

Exhibit 1 to the Declaration of Steven William Craft contain the Plaintiff Claudia Castillo Cordova 's agreement to arbitrate the disputes at bar. Exhibits 2 and 3 to the Declaration of Steven William Craft contain Plaintiff Ariannis Parra's agreement to arbitrate the disputes at bar. The obligation of each Plaintiff is mutual on the parties and succinct and clear:

## 22. ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS

The parties agree that this **Agreement** is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement. as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section 22. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own attorneys fees, expenses and costs in any arbitration except for the fees of the arbitrator as specifically provided for in this Section 22. The arbitrator will have no authority to make an award of attorneys fees, expenses and costs in any arbitration except to make an award for the fees charged by the arbitrator. The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this **Agreement**. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be IN THE COUNTY IN TEXAS IN WHICH THE PREMISES IS LOCATED. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply

the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 22 in which event the provisions of this Section 22 shall control.

**THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PARTIES WAIVE ANY RIGHT TO HAVE ANY CLAIM BETWEEN THEM ARBITRATED ON A CLASS OR COLLECTIVE ACTION BASIS AND THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS BETWEEN THE PARTIES TO BE ARBITRATED ON A CLASS ACTION BASIS NOR ON A COLLECTIVE ACTION BASIS. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA.**

**FOR ANY CLAIMS OF THE LICENSEE BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.**

**LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS OR COLLECTIVE GROUP CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS OR COLLECTIVE GROUP AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF LICENSEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.**

This Agreement to arbitrate shall apply to claims or disputes that are asserted by either party hereto against third parties **when the basis of such dispute or the claims raised by a party hereto are, or arise from, disputes that are required to be arbitrated under this Agreement.** Such applies to claims made against officers, directors, shareholders, and/or employees of any corporate party, any alleged joint actors, or based on any legal theory, claim or right that a third party is liable for the actions or obligations of a party to this Agreement.

**The parties agree that if any party refuses to proceed to arbitration of a claim subject to arbitration herein upon request or demand that they do so, that party refusing to go to arbitration shall be liable to the requesting/demanding party for all fees and cost incurred in compelling arbitration.**

**ARBITRATION SHALL BE THE SOLE FORUM TO DETERMINE THE VALIDITY, SCOPE AND BREATH OF THIS AGREEMENT.**

(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3)

In executing the written License and Lease Agreement (arbitration agreement),

Plaintiffs each respectively, and independently, acknowledged and agreed to its terms and

conditions. Nonetheless, on March 16, 2017, Plaintiffs improperly filed the instant action seeking damages for claims arising from the party's relationship and each Plaintiff's respective provision of services as an entertainer to Defendant Duncan Burch, Inc. d/b/a Michael's International/Chicas Locas under the License and Lease Agreement. (Dkt 1. Craft Decl.¶ 4, 6, 8 and 11).

For brevity Ms. Cordova and Ms. Parra will be collectively referred to at times herein as "Plaintiffs", though they must arbitrate their respective claims separately and on an individual basis.(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

### III.    Legal Standards for Dismissal/Stay/Compelling Arbitration

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(l) is proper where a court has no authority to hear and decide the case. When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, a Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof in a Rule 12(b)(l) motion is on the party asserting jurisdiction. See Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000; Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss based on a forum selection clause. Argueta v. Banco Mexicano, S.A., 87 F.3d 320,

324 (9th Cir. 1996). When considering a motion to dismiss under Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. Id. Once a defendant has challenged a court's jurisdiction for improper venue, the plaintiff bears the burden of showing that venue is proper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).

Pursuant to Reyna v. International Bank of Commerce 839 F3d 373 (5th Cir 2016) and Robinson v. J & K Administrative Management Services, Inc. 817 F3d 193 (5th Cir 2016), a Motion to Dismiss, Stay and Compel Arbitration is the proper vehicle to stay proceedings to compel arbitration, including of FLSA claims. See also 9 U.S.C. § 2, and argument herein.

Under these standards, Plaintiff's employment claims should be dismissed or stayed pending arbitration and Plaintiffs be compelled to participate in separate arbitration of their respective individual claims against Defendants .

## IV. Plaintiffs' Claims are Each Subject to Arbitration Agreement

Plaintiff's FLSA claims are subject to a valid and binding Arbitration Agreement which requires a separate resolution of each Plaintiff's respective claims through binding arbitration. As a result, this action should be dismissed, or, in the alternative, stayed pending arbitration.

### A.     The Federal Arbitration Act Governs This Dispute.

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA governs the question of arbitrability because the parties expressly agreed that their arbitration agreement would be governed by the FAA. (Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3)

The FAA "reflects Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999); see also AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1749 (2011) (noting that the Court's "cases place it beyond dispute that the FAA was designed to promote arbitration" and embody a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 n.14 (1985) (FAA "was designed to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law").

The Courts of The Southern District have clearly articulated the applicable legal standard when a party moves to compel arbitration pursuant to an agreement:

> "The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." Am. Bankers Ins. Co. of Fla. v. Inman, 436 F.3d 490, 493 (5th Cir. 2006) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); see also 9 U.S.C. § 4. FAA Section 4 provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with

the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. The FAA "leaves no place" for the court to exercise discretion. <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985). The court must direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed. *Id.* Agreements to arbitrate must be enforced, absent a ground for revoking the contractual agreement. *Id.*

In considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. "First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." <u>Tittle v. Enron Corp.</u>, 463 F.3d 410, 418 (5th Cir. 2006)."

<u>Carrell v. L & S Plumbing Partnership, Ltd.</u>, Civ. Action No. H-10-2523, 2011 WL 3300067, at *2 (S.D. Tex. Aug. 1, 2011) (Rosenthal, J.).

When faced with an Arbitration Agreement, the District Court's role is discrete and narrow: the Court must direct the parties to proceed to arbitration on all claims for which an arbitration agreement has been executed. <u>See</u> <u>Chiron Corp. v. Ortho Diagnostic Sys.,Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")(emphasis added) (internal quotation marks omitted); <u>see, e.g.,</u> <u>Hall St. Assocs., L.L.C. v. Mattel. Inc.</u>, 552 U.S. 576, 588, (2008) (if a dispute is referable to arbitration, it must be sent "straightaway"). See also <u>In Re FirstMerit Bank N.A.</u>, 52 S.W. 3d 740, (Tex.2001) (orig. proceeding).

To that end, Section 3 of the FAA requires courts, on the request of a party, to stay

court proceedings that involve an issue covered by an arbitration agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Accordingly, the only issues to be considered by a court are (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. See Chiron, 207 F.3d at 1130. See also In Re FirstMerit Bank N.A., 52 S.W. 3d 740, (Tex.2001) (orig. proceeding). Because both of these questions must be answered in the affirmative, as the scope of the arbitration clauses expressly includes FLSA claims and collective actions, and because the agreement is enforceable, this Court should grant the Defendants' motion and Plaintiffs' Complaint must be dismissed, or in the alternative, stayed pending arbitration. Reyna v. International Bank of Commerce 839 F3d 373 (5th Cir 2016) and Robinson v. J & K Administrative Management Services, Inc. 817 F3d 193 (5th Cir 2016).

**B.    The Arbitration Agreement is Valid.**

On the first question, i.e., whether each Plaintiff agreed to arbitrate disputes with Defendant Duncan Burch, Inc. d/b/a Michael's International (and therefore its officers/agents), there can be no dispute. Each Plaintiff agreed in writing to arbitrate any and

all disputes with Michael's International and its officers/agents, as well as those arising or derivative therefrom. (Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3). Moreover, the United States Supreme Court has held that arbitration agreements in the employment context are valid and enforceable even if imposed as a mandatory condition of employment. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). In this case, the Arbitration Policy is mandatory, and each Plaintiff expressly agreed to its provisions.(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

In an effort to avoid their contractual obligations, Plaintiffs may attempt to argue that each is not bound by the arbitration agreement. This argument is meritless, because each Plaintiff indisputably signed the arbitration agreement when each agreed to be an independent contractor for Defendant Duncan Burch, Inc. d/b/a Michael's International.(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3). The License Agreement clearly and unequivocally states:

> "The parties agree that this **Agreement** is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes)."

(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

Any additional argument by Plaintiffs that the Arbitration Agreement is

unconscionable is equally unavailing. "A finding of unconscionability requires a procedural and substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." AT&T Mobility, 131 S. Ct. at 1746. *"[B]oth* procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." Kilgore v. Fuller, 673 F.3d 947, 963 (9th Cir. 2012). "An arbitration clause is substantively unconscionable if the terms of the agreement . . . are so one-sided as to *shock the conscience*." Eshagh v. Terminix Int'l Co. L.P., Case No. 1:11cv0222, 2012 U.S. Dist. LEXIS 66527, *26 (E.D. Cal. May 11, 72012)(emphasis in original)(internal quotation marks omitted).  Here, there can be no legitimate dispute that the terms of the arbitration agreement are mutual and fair, and therefore not substantively unconscionable. In fact, the obligation to arbitrate is equally applicable to and binding upon both parties and may be modified only upon the written mutual consent of both parties. Paragraph 23 of the arbitration agreement provides: *"This Agreement may not be modified or amended except in accordance with a writing signed by each of the parties hereto*."(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3)(italics for emphasis).

Specifically, the arbitration agreement requires *both* Plaintiffs and Defendant Duncan Burch, Inc. d/b/a Michael's International to submit all claims to binding arbitration (Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3) Thus, the arbitration agreement is not substantively unconscionable. See, e.g., Eshagh, 2012 U.S. Dist LEXIS 66527 at *27-28

(finding no substantive unconscionability where arbitration agreement included a limitation regarding liability for "indirect, special or consequential damages or loss of anticipated rents and/or profits" because agreement was not one-sided and did not cap the maximum amount of recovery). In Re U.S. Home Corporation 236 S.W. 3d 761 (Tex. 2007) (orig. proceeding) (summarily denying shot gunned attacks on arbitration agreements reinforcing the difficult burden Plaintiffs have to avoid arbitration).

## C.     The Arbitration Agreement Encompasses Plaintiffs' FLSA Claims.

### (i) FLSA Claims

The Arbitration Agreement of the parties contains broad language regarding the scope of claims that must be resolved exclusively through final and binding arbitration, and clearly provides litigation is waived, the right to a trial by jury is waived and all claims arising as a result of the relationship between the parties shall be resolved solely by arbitration.(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3). Broadly worded arbitration clauses such as the provisions appearing in the agreement at bar cover employment disputes brought pursuant to the FLSA. Hampton v. ITT Corporation, 829 F.Supp. 202, 204 (S.D. Tex. 1993) (Rosenthal, J.).   In Re Vesta Insurance Group, Inc. 192 S.W. 3d 759 (Tex. 2006) (org proceeding).

There can be no question that the arbitration clauses at issue in this case, which apply to "any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any

Federal or State law" cover the claims of each Plaintiff against all Defendants. <u>Bridas</u>
<u>S.A.P.I.C. v. Government of Turkmenistan</u>, 345 F.3d 347, 361 (5th Cir. 2003). <u>Reyna v.</u>
<u>International Bank of Commerce</u> 839 F3d 373 (5th Cir 2016) and <u>Robinson v. J & K</u>
<u>Administrative Management Services, Inc.</u> 817 F3d 193 (5th Cir 2016).

### (ii) Claims must be arbitrated on Non-Collective Basis

The parties Arbitration Agreement states unequivocally:

> **<u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES,</u>**
> **<u>OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>. THE**
> **PARTIES WAIVE ANY RIGHT TO HAVE ANY CLAIM BETWEEN THEM ARBITRATED**
> **ON A CLASS OR COLLECTIVE ACTION BASIS AND THERE SHALL BE NO RIGHT OR**
> **AUTHORITY FOR ANY CLAIMS BETWEEN THE PARTIES TO BE ARBITRATED ON**
> **A CLASS ACTION BASIS NOR ON A COLLECTIVE ACTION BASIS.**

(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

Such requires Non-Collective and individual arbitration of all entertainers, includingd
Plaintiffs claims. <u>Reyna v. International Bank of Commerce</u> 839 F3d 373 (5th Cir 2016) and
<u>Robinson v. J & K Administrative Management Services, Inc.</u> 817 F3d 193 (5th Cir 2016).
See also (Craft Decl. ¶ 10).

### (iii) Scope of Arbitration including whether Collective Claims are subject to
### Arbitration or barred in arbitration are matters for Arbitration.

<u>Reyna v. International Bank of Commerce</u> 839 F3d 373 (5th Cir 2016) involved
a defendant who promptly moved to compel the FLSA plaintiff to arbitrate his claim, pursuant
to an arbitration agreement that undisputedly existed. The Court observed that those Court that

have addressed cases with similar postures are in agreement that whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached. Thus, the Fifth Circuit held that upon a motion to compel arbitration, a Court should address the arbitrability of the plaintiff's claim at the outset of the litigation. And if as here the arbitration agreement contains a valid delegation clause, any disputes about the arbitrability of Plaintiffs' claims or the scope of the arbitration agreement is to be decided by the arbitrator, not the Courts. In <u>Robinson v. J & K Administrative Management Services, Inc.</u> 817 F3d 193 (5th Cir 2016) a clauses such as present in the case in bar submitting "any dispute in connection with the agreement" included determinations of class or collective arbitration or that "claims challenging the validity or enforceability of" the agreement must be arbitrated required such claims to be arbitrated and that arbitration was properly compelled.

### (iv) Claims against Non Signatory Defendants subject to arbitration

Plaintiffs claims against all non-signatory Defendants, Burch Management Company Inc., Duncan Burch and any "John Doe" must be arbitrated as well. The parties agreement specifically provides:

> This Agreement to arbitrate shall apply to claims or disputes that are asserted by either party hereto against third parties **when the basis of such dispute or the claims raised by a party hereto are, or arise from, disputes that are required to be arbitrated under this Agreement.** Such applies to claims made against officers, directors, shareholders, and/or employees of any corporate party, any alleged joint actors, or based on any legal theory, claim or

right that a third party is liable for the actions or obligations of a party to this Agreement.

(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

Even without the foregoing express agreement, under Texas Law, actions against agents of a corporate Defendant are intended included in an arbitration clause, especially one as broadly worded as in the case at bar. In Re Vesta Insurance Group, Inc. 192 S.W. 3d 759 (Tex. 2006) (org proceeding). In Re H&R Block Financial Advisors, Inc. 235 S.W. 3d 177(Tex. 2007) (orig proceeding).In Re U.S. Home Corporation 236 S.W. 3d 761 (Tex. 2007) (orig. proceeding).

The doctrine of equitable estoppel applies to prevent "a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Id. (emphasis omitted). agreement that the estopped party has signed." Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 361 (5th Cir. 2003). (emphasis omitted). See also Meyers v. WMCO-GP, Inc. 211 S.W.3d 302 (Tex.. 2006). To say Plaintiffs' claims against Burch Management Company Inc., Duncan Burch and any "John Doe" (are intertwined with Plaintiffs' claims against Defendant Duncan Burch, Inc. d/b/a Michael's International would be a gross understatement. The Collective Action Complaint alleges the *exact same conduct* against all Defendants, whether corporate or individual. (*See* Docket No. 1, Plaintiff's Collective Action Complaint) One Federal District Court addressed the issue

of equitable estoppel in an FLSA claim alleging independent contractor misclassification:

> Indeed, [plaintiffs] Complaint fails to distinguish between the three Defendants in this action when alleging the most fundamental elements of his FLSA claim; [plaintiff] asserts that "he worked for *Defendants* in excess of forty (40) hours within a week," that "*Defendants* failed to compensate Plaintiff at a rate of one and one-half times the Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week," that "*Defendants* failed and continue[] to fail to maintain proper time records mandated by the FLSA," and that *Defendants* have violated Title 29 U.S.C. § 207."

Maldonado v. Mattress Firm, Inc., No. 8:13-cv-2929-T-33AEP, 2013 WL 2407086, at *4

(M.D. Fla. Jun. 3, 2013) (emphasis and brackets in original). The court applied the doctrine

of equitable estoppel and compelled arbitration against all defendants, holding that "[b]y

failing to distinguish between the actions of Defendants in his FLSA Complaint, [plaintiff]

has effectively asserted such 'interdependent and concerted misconduct' by Mattress Firm

and the Callahan Defendants." Id. at *5.

The language from the Maldonado Complaint is virtually identical to Plaintiffs'

allegations in this case. (*See* Docket No. 1). Furthermore, the claims against Burch

Management Company Inc, Duncan Burch and any John Doe are the exact same as the

claims against Defendant Duncan Burch, Inc. d/b/a Michael's International. (*See* Docket No.

1). The Plaintiffs are estopped from avoiding arbitration as to the claims they assert against

Burch Management Company Inc, Duncan Burch and any John Doe. See also Hampton v.

ITT Corporation, 829 F. Supp. 202, 204 (S.D. Tex. 1993) (Rosenthal, J.) (compelling

arbitration of claims against nonsignatory defendant ITT Corporation in FLSA claim);

Pacheco v. PCM Construction Servs., LLC, Civ. Action No. 3:12-CV-4057-L, 2014 WL 145147, at *8 (N.D. Tex. Jan. 15, 2014) (compelling arbitration against nonsignatory individual defendants in FLSA claim). Thus, Plaintiffs specifically agreed to arbitrate any claims against Defendant Duncan Burch Inc., d/b/a Michael's International and all Defendants, including those alleged in their Complaint, Burch Management Company Inc, Duncan Burch and any John Doe. See also Meyers v. WMCO-GP, Inc. 211 S.W.3d 302 (Tex.. 2006). *See also Easter v. Professional Performance Development Group, Inc.*, 2016 U.S. Dist. LEXIS 98178, 2016 WL 4033269 (W.D. Tex. 2016). After the plaintiff sued the employer and its president under various federal employment laws, the employer's president moved to compel arbitration pursuant to an agreement between the plaintiff and the employer. The district court ruled that the president could compel arbitration even though he was not a signatory to the agreement. Under Texas law, an intended third-party beneficiary of an arbitration agreement has a right to compel arbitration. The president qualified as an intended third-party beneficiary because the agreement stated that the employee-plaintiff agreed to arbitrate claims arising out of acts by the employer's employees.

### (v) Public Policy Requires Arbitration

The Federal Arbitration Act (FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." Wash. Mut. Fin. Grp., L.L.C. v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted). Specifically, pursuant to the FAA, individually executed

arbitration agreements do not only preclude an individual from pursuing an FLSA claim in court, but also from proceeding in a collective action. Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297-299 (5th Cir. 2004). See Carrell, 2011 WL 3300067, at *3 (state law governs defenses to enforceability of contracts containing arbitration provisions).

Texas law favors arbitration. In Re FirstMerit Bank N.A., 52 S.W. 3d 740, (Tex.2001) (orig. proceeding).  Once a valid arbitration agreement is established, the burden shifts to the party opposing it to prove any alleged defense to arbitration In Re Advanced PCS Health L. P., 172 S.W. 3d 603, 607 (Tex. 2005)(orig. proceeding). Because a presumption exists in favor of arbitration, courts must resolve any doubt about an arbitration agreement in favor of arbitration. In Re FirstMerit Bank N.A. 52 S.W. 3d 740,753 (Tex.2001) (orig. proceeding).

In accordance with the strong Federal and Texas public policy presumption favoring arbitration, any doubt whether a dispute comes within an arbitration clause is resolved in favor of arbitration. See Moses, 460 U.S. at 24-25 (1983). As the Supreme Court has clearly articulated, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, "arbitration should be compelled. Id. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion since the Act is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991).

Generally, determining whether a given claim is encompassed by an arbitration

agreement involves a two-part inquiry: first determining the breadth of the arbitration provision (whether it is broad or narrow), and second, applying the relevant scope of the provision to the asserted legal claims to determine if they require arbitration. See Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720-26 (9th Cir. 1999). In analyzing the scope of an arbitration provision, the relevant consideration is the factual allegations contained in the complaint, not the particular legal causes of action asserted. See Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc., 473 U.S. 614, 633 n.9 (1985). Further, one cannot attempt to avoid an arbitration provision by casting a claim as a tort. See Chastain v. Union Security Life Ins. Co., 502 F. Supp. 2d 1072, 1077 (C.D. Cal. 2007)("That the claims are cast in tort rather than contract does not avoid the arbitration clause.").

Here, each arbitration agreement explicitly sets forth the types of claims that are subject to the arbitration agreement - claims in any way related to Plaintiffs' respective relationship with Duncan Burch, Inc. d/b/a Michael's International (Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3). Thus, it was clearly the intent of the parties that all actions arising from the provision of services as an entertainer at Duncan Burch, Inc. d/b/a Michael's International by each Plaintiff, including each Plaintiff's claims for alleged violations of the FLSA and against corporate agents and third parties claimed liable as a result of said relationship, would be subject to binding arbitration. See Simula, 175 F.3d at 721 ("[t]o require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in

favor of arbitrability."). Such also applies to claims of the collective class arising therefrom.(Craft Decl. ¶ 3. Ex. 1) (Craft Decl. ¶ 5 and 7. Exs 2 and 3).

## V.  Conclusion

Based on the foregoing, Defendants respectfully request that the instant matter be dismissed, or alternatively stayed, so that it may be properly arbitrated in accordance with the parties' express written Arbitration Agreements.

Dated April 10, 2017                                      Respectfully submitted,

/s/ Charles J. Quaid
Charles J. Quaid
(Bar No. 164220500)
Southern Dist No. 383906
Quaid Farish LLC.
8150 No. Central Exp. Suite 600
Dallas, Texas 75206
214-373-9100
214-373-6688(telecopier)
E-mail: cquaid@quaidfarish.com
Defendants, Duncan Burch, Inc. d/b/a
Michael's International and also d/b/a
Chicas Locas, a Texas Corporation;
Burch Management Company, Inc.
(incorrectly referenced as Burch
Management, Inc.), a Texas Corporation,
and Duncan Burch, an individual

## CERTIFICATE OF SERVICE

I certify that this document was served on all parties via the Southern District's CM/ECF System and by telecopier to (832) 742-9261 on this 10th day of April, 2017, by serving the following:

Stephen W. Abbott (Attorney in Charge)
sabbott@pfalawfirm.com

SBN 00795933
Southern Dist. No. 408367
Matthew J.M. Prebeg
SBN 00791465
Southern Dist. No. 603742
Christopher M. Faucett
cfaucett@pfalawfirm.com
SBN 00795198
Southern Dist. No. 31046
Brent T. Caldwell
bcaldwell@pfalawfirm.com
SBN 24056971
Southern Dist. No. 827326
Prebeg, Faucett & Abbott, PLLC
8441 Gulf Freeway, Suite 307
Houston, Texas 77002


/s/ Charles J. Quaid
Charles J. Quaid

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON, DIVISION

| | | |
|---|---|---|
| CLAUDIA CASTILLO CORDOVA | § | |
| AND ARIANNIS PARRA, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § ` | |
| | § | |
| DUNCAN BURCH, INC. d/b/a | § | |
| MICHAEL'S INTERNATIONAL | § | CIVIL ACTION NO. |
| | § | 4:17-cv-00523 |
| AND ALSO d/b/a CHICAS | § | |
| LOCAS, A TEXAS CORPORATION; | § | |
| BURCH MANAGEMENT, INC., A | § | |
| TEXAS CORPORATION; DUNCAN | § | |
| BURCH, AN INDIVIDUAL, AND DOES | § | |
| 1-15 | § | |
| Defendants. | § | |

DECLARATION OF STEVEN WILLIAM CRAFT IN SUPPORT OF
DEFENDANTS, DUNCAN BURCH, INC d/b/a MICHAEL'S INTERNATIONAL
AND ALSO d/b/a CHICAS LOCAS, A TEXAS CORPORATION, BURCH
MANAGEMENT, INC., A TEXAS CORPORATION; and DUNCAN BURCH, AN
INDIVIDUAL's NOTICE OF MOTION AND MOTION TO DISMISS OR STAY
and TO COMPEL ARBITRATION

I, Steven William Craft, the undersigned, declare as follows;

1.      I am a resident of Ft.Worth, Tarrant County, Texas. I am over
the age of eighteen. I have never been convicted of a felony or crime involving
moral turpitude. I have personal knowledge of the facts contained in this
declaration, and if called as a witness, I could and would testify truthfully and
competently to those facts. I make this declaration in support of Defendants,
Duncan Burch, Inc d/b/a Michael's International and Also d/b/a Chicas Locas, a
Texas Corporation, Burch Management, Inc., a Texas Corporation; and Duncan
Burch, an Individual's Notice of Motion and Motion to Dismiss or Stay and to
Compel Arbitration.

2.      I am currently President of Defendant Duncan Burch, Inc. and have held
said position for at least 5 years. Among my duties, I oversee implementation of

License and Lease Agreement with all independent contractor entertainers who contract with Michael's International/Chicas Locas. I am the duly authorized custodian of the records of said License and Lease Agreements and am familiar with how said independent contractor entertainers License and Lease Agreements are maintained by Michael's International/Chicas Locas. These Records, including the exhibits hereto are maintained at the location of Michael's International/Chicas Locas, or at its storage facilities in Dallas, Texas.

3. On January 13, 2016, Plaintiff, Claudia Castillo Cordova, entered into a written License and Lease Agreement with Michael's International/Chicas Locas to provide her services as an entertainer on a independent contractor basis. A true, complete and correct copy of same is attached hereto as Exhibit 1 and incorporated by reference herein. Such License and Lease Agreement contains an agreement that all claims arising from the License and Lease Agreement and the parties thereto's relationship, including those made the basis of Plaintiff, Claudia Castillo Cordova's current lawsuit for which this declaration is made, would be and are subject to binding arbitration.(See paragraph 22 thereof).

4. Paragraph 22 of Exhibit 1 clearly sets forth the requirement for mandatory arbitration of all claims brought by Plaintiff, Claudia Castillo Cordova against Defendants in this lawsuit.

5. On November 30, 2015, Plaintiff, Ariannis Parra entered into a written License and Lease Agreement with Michael's International/Chicas Locas to provide her services as an entertainer on a independent contractor basis. A true, complete and correct copy of same is attached hereto as Exhibit 2 and incorporated by reference herein. Such License and Lease Agreement contains an agreement that all claims arising from the License and Lease Agreement and the parties thereto's relationship, including those made the basis of Plaintiff, Ariannis Parra's current lawsuit for which this declaration is made, would be and are subject to binding arbitration.(See paragraph 22 thereof).

6. Paragraph 22 of Exhibit 2 clearly sets forth the requirement for mandatory arbitration of all claims brought by Plaintiff, Claudia Castillo Cordova against Defendants in this lawsuit.

7. On April 25, 2016, Plaintiff, Ariannis Parra entered into a second written License and Lease Agreement with Michael's International/Chicas Locas to provide her services as an entertainer on a independent contractor basis. A true, complete and correct copy of same is attached hereto as Exhibit 3 and incorporated by reference herein. Such License and Lease Agreement contains an agreement that all claims arising from the License and Lease Agreement and the parties

thereto's relationship, including those made the basis of Plaintiff, Ariannis Parra's current lawsuit for which this declaration is made, would be and are subject to binding arbitration.(See paragraph 22 thereof).

8. Paragraph 22 of Exhibit 3 clearly sets forth the requirement for mandatory arbitration of all claims brought by Plaintiff, Ariannis Parra against Defendants in this lawsuit.

9. Defendants will request on or before the answer date in this matter that Plaintiffs dismiss their case or agree to an Order staying this case, pending completion of their respective arbitration but anticipates such request will be refused.

10. Every entertainer providing their services to Defendant Duncan Burch, Inc. d/b/a Michael's International/Chicas Locas since the first of December 2012, have executed a License and Lease Agreement containing an agreement that all claims arising from the License and Lease Agreement and the parties thereto's relationship, including those made the basis of Plaintiffs' current lawsuit for which this declaration is made, would be subject and are to binding arbitration. Such would apply to all or almost all of the entertainers who have provided their services to Defendant Duncan Burch, Inc. d/b/a Michael's International/Chicas Locas over the last three years.

11. On March 16, 2017, Plaintiffs filed suit against all Defendants for recovery of damages arising out of each Plaintiff's relationship with Defendant, Duncan Burch Inc,. d/b/a Michael's International/Chicas Locas and therefore subject to the arbitration provisions of the License and Lease Agreements each signed as referenced herein. Burch Management Company, Inc. (incorrectly identified as Burch Management, Inc.) and Duncan Burch, as well as John Does, are sued by Plaintiffs setting forth allegations as if all Defendant's actions were that of the corporate Defendant, Duncan Burch Inc,. d/b/a Michael's International, as a "single enterprise", because allegedly Duncan Burch is an officer and director of the corporate Defendant, Duncan Burch Inc. Plaintiffs claim that all Defendants are liable as they "acted directly or indirectly in the interest of Plaintiffs and Class Members' employment as their employer" or as effectively Defendant, Duncan Burch Inc.. *See Clerk's Record Document 1.* Plaintiffs' claims against all Defendants in addition to Duncan Burch, Inc. are brought against said additional Defendant as agents and corporate representatives of the corporate Defendant, Duncan Burch Inc. alleging a commonality of enterprise, responsibility and arise from the relationship between Plaintiffs and the corporate Defendant, Duncan Burch Inc. which is the subject of and must be arbitrated under the express terms attached License and Lease Agreement. Further Plaintiffs are estopped to assert

otherwise.

12. Defendants will demand on or before the answer date in this matter that Plaintiffs take the action sought by Defendants, Duncan Burch, Inc d/b/a Michael's International and Also d/b/a Chicas Locas, a Texas Corporation, Burch Management, Inc., a Texas Corporation; and Duncan Burch, an Individual's Notice of Motion and Motion to Dismiss or Stay and to Compel Arbitration, but anticipate such has not been agreed upon by Plaintiffs.

I declare under the penalty of perjury under the laws of the United States of America and the State of Texas that the foregoing is true and correct.

Executed this 10ᵗʰ day of April, 2017.

Steven William Craft

## LICENSE AND LEASE AGREEMENT

### NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS CONTRACT – READ IT!

AGREEMENT COMMENCEMENT DATE: ___1/13/16___

LICENSOR: Michael's International (the "Club" or "Licensor")

LICENSEE NAME: __Claudia Castillo__ ("Licensee")

LICENSEE Stage Name: __Ayaney__

PREMISE(s): 6440 Southwest Freeway, Houston, Harris County, Texas

**LICENSEE ACKNOWLEDGES THAT LICENSEE HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED TERMS AND CONDITIONS IN ITS ENTIRETY, THAT LICENSEE HAS BEEN GIVEN AN OPPORTUNITY TO ASK LICENSOR QUESTIONS ABOUT IT OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT LICENSEE HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF LICENSEE'S CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. LICENSEE ACKNOWLEDGES THAT LICENSEE UNDERSTANDS THE TERM AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.**

**THIS AGREEMENT REPLACES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE "MEETING OF THE MINDS" SHOULD HAVE BEEN WHEN THE PARTIES ESTABLISHED THEIR RELATIONSHIP, THE TERMS AND CONDITIONS HEREIN ARE DEEMED EFFECTIVE FROM THE DATE OF ANY PRIOR AGREEMENT BETWEEN THE PARTIES, SHOULD ONE EXIST.**

This **AGREEMENT** is entered into by the **"LICENSOR"** and **"LICENSEE"** for the leasing of certain portions of the **"Premises"** and the grant of License related thereto as follows:

**LICENSE/LEASE TERMS AND CONDITIONS**

**1.    PURPOSE**

The Licensor operates an adult cabaret on the Premises, and Licensee, who is engaged in the independently established trade and occupation of professional exotic dance entertainment and who runs Licensee's own business that provides such entertainment services, desires to lease from the Club, jointly together with other similar entertainers and upon the terms contained in this Agreement, the right to use certain areas of the Premises for activities related to the presentation of live dance entertainment to the adult public.

**2.    GRANT OF LICENSE/LEASE RIGHT**

Licensee hereby licenses from the Licensor the right during normal business hours of Licensor to jointly, along with other entertainers, use the stage areas and certain other portions of the Premises designated by the Licensor for the performing of live erotic dance entertainment and related activities, upon the terms and conditions contained in this Agreement. The Licensor hereby grants Licensee a temporary, revocable license (the "License") and non-exclusive right to use and occupy the designated portions of the Premises (the "Temporary Space Lease" or the "Lease") commencing on the Agreement Commencement Date and continuing until the Termination Date, defined herein, subject

<u>CQC</u>
Licensee's Initials



EXHIBIT
1

Page 1 of 11

to the terms and conditions contained herein.

This License shall be limited to Licensee's use and occupancy of the Premises as an erotic entertainer/dancer and Licensee shall be entitled to perform such entertainment services at the Club. Licensee shall not use or occupy the Club or Premises or act or fail to act in any way which would constitute an event of default by Licensee under this Agreement.

3.     DURATION OF LICENSE AND TEMPORARY SPACE LEASE: TERMINATION OF LICENSE AND TEMPORARY SPACE LEASE

This Agreement shall be for the period commencing on the date it is signed by all parties (Agreement Commencement Date) and shall terminate on December 31 of the year of execution (unless the parties agree, in writing, to modify the term). The License shall thereafter be automatically extended for successive one year periods running from January 1 through December 31 of each year thereafter. Notwithstanding the foregoing, at any time after the first year of the License term, this License may be terminated (a) within thirty (30) days after the receipt of written termination notice from the Licensor to Licensee (b) the last day of the month that is ninety (90) days after the receipt of a written termination notice from Licensee to Licensor, or (c) such sooner date in accordance with paragraph 19 hereof, any such dates which shall be the "License Termination Date." Upon the License Termination Date, Licensee shall have no further right to use and occupy the Premises and the License and lease rights granted to Licensee shall terminate.

4.     LICENSOR'S ADDITIONAL OBLIGATIONS

In addition to leasing the Premises, the Club shall provide to Licensee, at the Club's expense:

    A.     Music (including ASCAP/BMI/SESAC fees);

    B.     Dressing Room Facilities;

    C.     Lockers (as and if available);

    D.     Wait Staff;

    E.     Beverage Service; and

    F.     Advertisement of the Club (any advertisement specific to the Licensee shall be at Licensee's sole cost and expense and the Club shall have no obligation to advertise for the Licensee);

5.     SUBLEASING/ASSIGNMENT

This Agreement is acknowledged to be personal in nature. This means that Licensee has no right to sublease or to assign any of Licensee's rights or obligations in this Agreement to any other person without the express written consent of the Club. However, if Licensee is unable to fulfill Licensee's contractual obligations during any scheduled set, Licensee shall have the right to substitute the services of any licensed entertainer who has also entered into a License and Lease Agreement with the Club. Licensee may substitute only one entertainer per scheduled set and for the complete length of the scheduled set (i.e. no partial set period substitution allowed). Any such substitution shall not, however, relieve Licensee of the rent, lost rent charge and/or contract damage obligations as contained in this Agreement if the substitute entertainer fails to pay any of those fees due as a result of the substitute's lease obligations. Licensor may assign Licensor's rights and obligations hereunder, but may not in doing so otherwise affect Licencee's License/Lease of the Premises.

6.     NON-EXCLUSIVITY

_CCe_____
Licensee's Initials

Licensee's obligations under this Agreement are nonexclusive, meaning that Licensee is free to perform Licensee's entertainment activities at other businesses or at locations other than at the Club's Premises.

7. **USE OF PREMISES**

Licensee agrees to:

A. Perform clothed, semi-nude ( i. e. "topless") or nude (whichever is permitted by law) erotic, expressive dance entertainment at the Premises (but only in the manner and attire allowed under applicable law);

B. Obtain, keep in full force and effect, and have in Licensee's possession at all times while Licensee is on the Premises and available for inspection as may be required by law, any and all required licenses and/or permits and provide the Club with all necessary, current and accurate information about the Licensee required by law for the Club to maintain. The failure of Licensee to maintain current and in Licensee's possession a required license and/or permit shall not relieve Licensee of Licensee's rent obligations as provided for in this Agreement;

C. Not violate any federal, state, or local laws or governmental regulations. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

D. Become knowledgeable of all laws and governmental regulations that apply to Licensee's conduct while on the Premises and comply therewith and in particular, of all regulations and laws related to businesses that provide alcoholic beverages, businesses that are defined as sexually oriented businesses and the Texas Penal Code. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

E. Maintain accurate daily records of all income, including tips, earned while performing on the Premises, in accordance with all federal, state, and local taxation laws and this Agreement;

F. Pay for any damages Licensee causes to the Premises and/or to any of the Club's personal property, furniture, fixtures, inventory, stock and/or equipment, normal wear and tear excepted; and

G. Conduct his or herself in a manner consistent with normal civil decorum, decency and etiquette in dealings inside the Premises and with customers and other independent contractors and employees therein. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such conduct requirements is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

Licensee shall not use the name, logo, trademarks, service marks of Licensor without prior written authorization of the Licensor.

8. **NATURE OF PERFORMANCE**

The Club has no right to direct or control the nature, content, character, manner or means of Licensee's entertainment services or of Licensee's performances.

<u>EXCEPT AS MAY IN WRITING BE SPECIFICALLY RELEASED, WAIVED OR TRANSFERRED, SO LONG AS</u>

QCC
_____
Licensee's Initials

THE RELATIONSHIP BETWEEN LICENSEE AND THE CLUB IS THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE. LICENSEE SHALL OWN AND RETAIN ALL INTELLECTUAL PROPERTY RIGHTS OF LICENSEE'S ENTERTAINMENT PERFORMANCES, INCLUDING BUT NOT LIMITED TO ALL COPYRIGHTS AND RIGHTS OF PUBLICITY. ALL OF THESE RIGHTS BECOME THE PROPERTY OF THE CLUB, HOWEVER, IF THE RELATIONSHIP IS EVER CHANGED TO THAT OF EMPLOYER AND EMPLOYEE.

**9.     COSTUMES**

Licensee shall supply all of Licensee's own costumes and wearing apparel, which must comply with all applicable laws. The Club shall not control in any way the choice of costumes and/or wearing apparel made by Licensee.

**10.     NATURE OF BUSINESS**

Licensee understands: 1) That the nature of the business operated at the Premises is that of adult entertainment; 2) that Licensee may be subjected to either full or partial nudity and explicit language; and 3) that Licensee may be subjected to advances by customers, to depictions or portrayals of a sexual nature, and to similar types of behavior. Licensee represents that Licensee is not, and will not be, offended by such conduct, depictions, portrayals, and language, and that Licensee assumes any and all risks associated with being subjected to these matters.

**11.     PRIVACY**

Licensee and the Club acknowledge that privacy and personal safety are important concerns to Licensee. Accordingly, the Club shall not knowingly disclose to any persons who are not associated with the Club, or to any governmental entity, department, or agency, either the legal name of the Licensee, Licensee's address, or telephone number, EXCEPT upon prior written authorization of the Licensee or as may be required by law.

**12.     ENTERTAINMENT FEES**

Based upon local industry custom and practice and in consultation with entertainers who lease space on the Premises, the Club shall establish a fixed fee for the price of certain performances engaged in on the Premises (referred to as "Entertainment Fees"). Currently, the parties agree that the Entertainment Fee is that amount as set out in the Specifications attachment hereto. Licensee agrees not to charge a customer more or less than the fixed price for any such performance unless the Licensee notifies the Club in writing of any charges to Licensee's customers of a higher or lower amount. Nothing contained in this Agreement, however, shall limit Licensee from receiving "tips" and/or gratuities over-and-above the established price for such performances. THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR OBTAINING THE SERVICE OF A PERSONAL ENTERTAINMENT PERFORMANCE

**13.     BUSINESS RELATIONSHIP OF PARTIES**

A.      The parties acknowledge that the business relationship created between the Club and Licensee is that of (a) Licensor/Licensee and (b) landlord and tenant for the joint and non-exclusive leasing of the Premises (meaning that other entertainers are also leasing the premises at the same time), and that this relationship is a material (meaning significant) part of this Agreement. THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and agree that this Agreement shall not be interpreted as creating an employer/employee relationship or any contract for employment. LICENSEE UNDERSTANDS THAT THE CLUB WILL NOT PAY LICENSEE ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS

B.      The Club and Licensee acknowledge that if the relationship between them was that of employer and employee,

the Club would be required to collect, and would retain, all Entertainment Fees paid by customers to Licensee. **LICENSEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IN THE CIRCUMSTANCE OF AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE <u>PROPERTY OF THE CLUB</u> AND WOULD <u>NOT</u> BE THE PROPERTY OF LICENSEE. <u>THE PARTIES ACKNOWLEDGE THAT LICENSEE'S RIGHT TO OBTAIN AND KEEP ENTERTAINMENT FEES PURSUANT TO THIS AGREEMENT IS SPECIFICALLY CONTINGENT AND CONDITIONED UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE.</u>**

C.    The parties additionally acknowledge that were the relationship between them to be that of employer and employee, Licensee's employment would be "at will" (meaning Licensee could be fired at any time without cause and without prior notice or warning), and that the Club would be entitled to control, among other things, Licensee's: Work schedule and the hours of work; job responsibilities; physical presentation (such as make-up, hairstyle, etc.); costumes and other wearing apparel; work habits; the selection of Licensee's customers; the nature, content, character, manner and means of Licensee's performances; and Licensee's ability to perform at other locations and for other businesses. Licensee hereby represents that Licensee desires to be able to make all of these choices for Licensee and without the control of the Club, and the Club and Licensee agree by the terms of this Agreement that all such decisions are exclusively reserved to the control of Licensee. **LICENSEE FURTHER SPECIFICALLY REPRESENTS THAT LICENSEE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS PARAGRAPH 13, BUT, RATHER LICENSEE DESIRES TO PERFORM AS A LICENSEE/TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS AGREEMENT.**

D.    If any court, tribunal, or governmental agency determines, or if Licensee at any time contends, claims, or asserts, that the relationship between the parties is something other than that of Licensor/Lessor and Licensee/Lessee and that Licensee is then entitled to the payment of monies from the Club, all of the following shall apply:

　　　　(i)    In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Licensee is not unjustly enriched by the parties having financially operated pursuant to the terms of this Agreement, the Club and Licensee agree that Licensee shall surrender, reimburse and pay to the Club, all Entertainment Fees received by Licensee at any time Licensee performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Licensee under the terms of this Agreement- and shall immediately provide a full accounting to the Club of all tip income which Licensee received during that time;

　　　　(ii)    Any Entertainment Fees that Licensee refuses to return to the Club shall be deemed service charges to the customer and shall be accounted for by the Club as such. Licensee shall owe the Club the amount of such Entertainment Fees and as such, the Club shall then be entitled to full wage credit for all Entertainment Fees retained by Licensee, and such withheld fees shall therefore constitute wages paid from the Club to Licensee. In the event that Licensee refuses to return Entertainment Fees to the Club, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income consistent with this subparagraph;

　　　　. (iii)    If despite Licensee's express obligation hereunder to maintain accurate records, the Licensee is unable or unwilling to provide the Club with reliable documentation of all Entertainment Fees received by Licensee at any time Licensee performed on the premises, Licensee and the Club hereby stipulate and agree that the amount of Entertainment Fees received by

<u>CLC</u>
Licensee's Initials

Licensee shall be deemed to be an amount in excess of any minimum hourly wage to which Licensee would be entitled as an employee.

(iv)    The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in this paragraph.

(v)    If at any time Licensee believes that, irrespective of the terms of this Agreement, Licensee is being treated as an employee by the Club or that Licencee's relationship with the Club is truly that of an employee, Licensee shall immediately, but in no event later than three business days thereafter, provide notice to the Club in writing of Licensee's demand to be fully treated as an employee consistent with the terms of this paragraph and applicable law, and shall also within the same time period begin reporting all of Licensee's tip income to the Club on a daily basis; such tip reporting being required of all tipped employees of the Club under the terms of the Internal Revenue Code.

14.    TAXES

Licensee shall be solely responsible for, and shall pay, all federal, state, and local taxes and contributions imposed upon any income earned by Licensee while performing on the Premises (including but not limited to income taxes and social security obligations). Licensee shall indemnify and hold harmless the Club from any such taxes. Licensee shall keep all required records and supporting proof thereof.

15.    SCHEDULING OF LEASE DATES

Licensee shall select, at least one week in advance, any and all days that Licensee desires to lease the Premises during the following week, and the Club shall make the leased portion of the Premises available to Licensee during those dates and times, subject only to space availability. Should Licensee desire not to perform on the Premises at all during any given week, Licensee shall give the Club notice of this at least one week in advance. Once scheduled, neither Licensee nor the Club shall have the right to cancel or change any scheduled performance dates except as may be agreed to by Licensee and the Club. For each day that Licensee schedules him or herself to perform, Licensee agrees to be on the Premises, available to perform, for a minimum number of consecutive hours as stated in the "SPECIFICATIONS" section on the last page of this Agreement (one "set"). During those weeks that Licensee desires to perform, Licensee agrees to lease space at the Premises for at least the minimum number of sets per week as stated in the "SPECIFICATIONS" section of this Agreement. Licensee may be permitted to lease space on the Premises on days when Licensee has not scheduled him or herself to perform, subject to space availability.

If Licensee misses an entire scheduled set, Licensee shall pay to the Club as a lost rent charge, a fee for each set missed as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of Licensee's next set. If Licensee fails to timely commence a scheduled set, Licensee shall pay to the Club as contract damages $8.00 for each one-half hour missed up to a maximum of the lost rent charge as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of that set. All lost rent charges and contract damages stated in this Agreement are established in view of the fact that it would be difficult to determine the exact lost rent or damage incurred as a result of certain breaches of the terms of this Agreement.

16.    RENT

Licensee agrees to pay rent to the Club (referred to as "set rent") in the amounts as stated in the "SPECIFICATIONS" section of this Agreement. All set rent shall be paid immediately on or before completion of any set.

17.    MATERIAL BREACH BY CLUB

_____
Licensee's Initials

The **Club** materially breaches this **Agreement** by:

    A.    Failing to provide to **Licensee** the leased portion of the **Premises** on any day as scheduled by **Licensee**;

    B.    Failing to maintain any and all required and available licenses and/or permits;

    C.    Failing to maintain in full force any and all leases and subleases with the owner of the **Premises**;

    D.    Failing to maintain in full force all utilities services for the **Premises**; and

    E.    Failing to maintain the **Premises** in a safe and orderly manner.

The **Club** shall not be liable for any material breach as set forth in this paragraph due to acts of God, to any other cause beyond the reasonable control of the **Club**, or as a result of the action of any government entity or agency or the interpretation thereby of any law rule or regulation affecting the **Club**.

## 18.    MATERIAL BREACH BY LICENSEE

**Licensee** materially breaches this **Agreement** by:

    Failing to maintain any and all required licenses and/or permits;

    Willfully violating any federal, state, or local law or regulation while on the **Premises**;

    Failing to appear for a scheduled set on two or more occasions in any one calendar month without proving a proper substitute as allowed and in the manner provided for herein;

    Failing to pay any set rent when due;

    Failing to timely pay any assessed lost rent charges or contract damages;

    Claiming the business relationship with the **Club** as being other than that of a landlord and tenant;

    Violating any public health or safety rules or concerns; or

    Violating any of the provisions of this **Agreement**.

## 19.    TERMINATION/BREACH /DEFAULT

In the event **Licensee** shall be in default of any obligation to pay money under this **Agreement** or in the event **Licensee** shall be in default of any non-monetary provision of this **Agreement** (including but not limited to violation any Federal, state or local laws or regulations), the **License** granted to **Licensee** herein shall immediately terminate, and **Licensor** shall have the right to the extent permitted by law, to (i) immediately withdraw the permission hereby granted to **Licensee** to use the **Premises**; and (ii) remove all persons and property therefrom, without being deemed to have committed any manner of trespass, assault or false imprisonment. Such remedies shall be in addition to any other rights or remedies **Licensor** may have hereunder or at law or equity.

In the event **Licensor** shall be in default of **Licensor's** obligations hereunder, **Licensee's** sole remedy is to terminate this **Agreement**.

Either party may terminate this **Agreement**, without cause, upon thirty (30) days notice to the other party. Upon material

_CCl_
Licensee's Initials

breach, the non-breaching party may terminate this Agreement upon twenty-four (24) hours notice to the other party, or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Licensee to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws, regulations, or public health or safety rules or concerns.

## 20. SEVERABILITY

If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. In the event that any term, paragraph, subparagraph, or portion of this Agreement is declared to be illegal or unenforceable, this Agreement shall, to the extent possible, be interpreted as if that provision was not a part of this Agreement; it being the intent of the parties that any illegal or unenforceable portion of this Agreement, to the extent possible, be severable from this Agreement as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Licensee and the Club is something other than that of landlord and tenant, the relationship between Licensee and the Club shall be controlled by the provisions of this Agreement.

## 21.     GOVERNING LAW

This Agreement shall be interpreted pursuant to the laws of the State of Texas

## 22.     ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS

The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section 22. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own attorneys fees, expenses and costs in any arbitration except for the fees of the arbitrator as specifically provided for in this Section 22. The arbitrator will have no authority to make an award of attorneys fees, expenses and costs in any arbitration except to make an award for the fees charged by the arbitrator. The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be IN THE COUNTY IN TEXAS IN WHICH THE PREMISES IS LOCATED. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 22 in which event the provisions of this Section 22 shall control.

**THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PARTIES WAIVE ANY RIGHT TO HAVE ANY CLAIM BETWEEN THEM ARBITRATED ON A CLASS OR COLLECTIVE ACTION BASIS AND THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS BETWEEN THE PARTIES TO BE ARBITRATED ON A CLASS ACTION BASIS NOR ON A COLLECTIVE ACTION BASIS. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT**

<u>_CCC_</u>
Licensee's Initials

Page 8 of 11

ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. <u>THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA.</u>

FOR ANY CLAIMS OF THE LICENSEE BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

<u>LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS OR COLLECTIVE GROUP CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS OR COLLECTIVE GROUP AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF LICENSEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.</u>

This Agreement to arbitrate shall apply to claims or disputes that are asserted by either party hereto against third parties when the basis of such dispute or the claims raised by a party hereto are, or arise from, disputes that are required to be arbitrated under this Agreement. Such applies to claims made against officers, directors, shareholders, and/or employees of any corporate party, any alleged joint actors, or based on any legal theory, claim or right that a third party is liable for the actions or obligations of a party to this Agreement.

The parties agree that if any party refuses to proceed to arbitration of a claim subject to arbitration herein upon request or demand that they do so, that party refusing to go to arbitration shall be liable to the requesting/demanding party for all fees and cost incurred in compelling arbitration.

ARBITRATION SHALL BE THE SOLE FORUM TO DETERMINE THE VALIDITY, SCOPE AND BREATH OF THIS AGREEMENT.

23.     MISCELLANEOUS

This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement and the Specification attachment hereto, provided however, if this Agreement is not the initial Agreement on this subject matter executed by the parties, the parties have also executed contemporaneously with the execution of this Agreement, a "Mutual Release of Claims" which is part and parcel of the Parties' agreement and made a part hereof, the same as if fully copied and set out at length herein.

No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement.

The Club's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement.

This Agreement may not be modified or amended except in accordance with a writing signed by each of the parties hereto.

_QC_

Licensee's Initials

Page 9 of 11

Sections/Paragraphs 1,6,11,12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, and 25 shall survive the termination of this Agreement.

The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matters to be considered in construing the terms of this Agreement.

Time is of the essence in the performance of this Agreement.

This Agreement may be executed in multiple original counterparts, in such event each of which shall be deemed an original, but which together shall constitute one and the same instrument.

Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural and vice versa, unless the context requires otherwise.

If any time period or deadline hereunder expires on a Saturday, Sunday or legal holiday recognized in the State of Texas, the time period or deadlines shall be extended to the first business day thereafter.

The effective date of this Agreement shall be upon the date it is signed by all parties.

Nothing herein shall be construed or constitute a partnership or joint venture between the parties hereto.

This Agreement shall be binding upon and shall inure to the benefit of Licensor and Licensee and their respective legal representatives, successors and assigns.

If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

All parties will do all things reasonably necessary or appropriate to fulfill the terms and conditions of this Agreement, including the execution of all necessary documents pertaining thereto.

BECAUSE OF LEGAL RESTRICTIONS, THE CLUB WILL NOT ENTER INTO A AGREEMENT WITH AN LICENSEE WHO IS UNDER THE AGE OF EIGHTEEN (18) AND THIS AGREEMENT IS NULL AND VOID IF LICENSEE IS NOT OF SUCH AGE. LICENSEE SPECIFICALLY REPRESENTS THAT LICENSEE IS OF THIS LAWFUL AGE OR OLDER, THAT LICENSEE HAS PROVIDED APPROPRIATE IDENTIFICATION VERIFYING LICENSEE'S AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

BY SIGNING THIS DOCUMENT, LICENSEE REPRESENTS THAT LICENSEE HAS RECEIVED A COPY OF, AND HAS FULLY READ THIS AGREEMENT; THAT LICENSEE UNDERSTANDS, AND AGREES TO BE BOUND BY, ALL OF ITS TERMS; AND THAT LICENSEE HAS BEEN PERMITTED TO ASK QUESTIONS REGARDING ITS CONTENTS AND HAS BEEN GIVEN THE OPPORTUNITY TO HAVE IT REVIEWED BY PERSONS OF LICENSEE'S CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

24.     RELEASE FROM LIABILITY

Licensee agrees that Licensor shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except Licensor's willful misconduct. Licensee shall not hold Licensor in any way responsible or liable therefore and will indemnify and hold Licensor harmless - from and against any and all claims, liabilities, penalties, damages, judgements and expenses (including, without limitation, reasonable attorneys fees and disbursements) arising from injury to person or property of any nature

CLC
Licensee's Initials                                                                                      Page 10 of 11

arising out of Licensee's use or occupancy of the Premises and also for any other matter arising out of Licensee's use or occupancy of the Premises including damage or injury caused by Licensee.

**25.   CONFIDENTIALITY**

Licensor and Licensee acknowledge that each may come into contact with information in all forms regarding the other's business, clients and clients' businesses. All such information shall be deemed confidential information and shall not be used or communicated by the other at any time for any reason whatsoever.

**26.   NOTICES**

Any notices required or permitted to be given to either party under this Agreement shall be given to the representative parties at the address written provided in this Agreement by hand, by reputable overnight courier (for next business day delivery) or by Certified mail, return receipt requested. Such notices shall be deemed given upon: a) delivery, in the case of hand delivery; b) one business day after mailing in the case of overnight courier, and c) three business days after mailing, in the case of mailing.

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. ANY NEGOTIATED CHANGES TO THIS CONTRACT MUST BE INITIALED BY BOTH PARTIES IN THE MARGINS DIRECTLY NEXT TO THE MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

**AGREED TO AND ACKNOWLEDGED BY:**

Claudea Castillo Cordova
Licensee (Legal name of Licensee)
Date: 1/13/16
Address (City State Zip) 9001 Town Park K apt 203
Phone 713-614-7875   Houstou tx 77036
email address
Permit Number _____

Witness & Authorized Representative of the Licensor, Michael's International
Date: 1 13 2006

lll
Licensee's Initials

## SPECIFICATIONS

The agreed minimum number of "Sets" per week is 3.

Each Scheduled performance day "Set" shall consist of either (a) an eight (8) consecutive hour period for day shift (11:00 a.m. to 7:00 p.m.), (b) a seven (7) consecutive hour period for night shift (7:00 p.m. to 2:00 a.m.), or (c) an eight (8) consecutive hour period for "cross" shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.).

The agreed Rental charges OR "SET FEES" for day shift (11:00 a.m. to 7:00 p.m.) is $5.00 per shift/set.
The agreed Rental charges OR "SET FEES" for night shift (7:00 p.m. to 2:00 a.m.), is $15.00 per shift.
The agreed Rental charges OR "SET FEES" for cross shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.) is $15.00 per shift.

The agreed "loss rental fee" is an amount equal to the above rental charge/Set Fee applicable for the set missed.

The agreed current industry customary Entertainment Fee for a private performance/table dance is $20.00 per dance.

_Claudea Castillolandova_                     Date: 1/13/16

Licensee
Name:

_[signature]_                                          Date: 1/13/16

Witness & Authorized Representative of the Licensor

## LICENSE AND LEASE AGREEMENT

## NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS CONTRACT – READ IT!

AGREEMENT COMMENCEMENT DATE: _11 /20 /15_

LICENSOR: Michael's International (the "Club" or "Licensor")

LICENSEE NAME: _ARIANAIS PARRA_ ("Licensee")

LICENSEE Stage Name: _YANET_

PREMISE(s): 6440 Southwest Freeway, Houston, Harris County, Texas

**LICENSEE ACKNOWLEDGES THAT LICENSEE HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED TERMS AND CONDITIONS IN ITS ENTIRETY, THAT LICENSEE HAS BEEN GIVEN AN OPPORTUNITY TO ASK LICENSOR QUESTIONS ABOUT IT OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT LICENSEE HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF LICENSEE'S CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. LICENSEE ACKNOWLEDGES THAT LICENSEE UNDERSTANDS THE TERM AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.**

**THIS AGREEMENT REPLACES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE "MEETING OF THE MINDS" SHOULD HAVE BEEN WHEN THE PARTIES ESTABLISHED THEIR RELATIONSHIP, THE TERMS AND CONDITIONS HEREIN ARE DEEMED EFFECTIVE FROM THE DATE OF ANY PRIOR AGREEMENT BETWEEN THE PARTIES, SHOULD ONE EXIST.**

This **AGREEMENT** is entered into by the **"LICENSOR"** and **"LICENSEE"** for the leasing of certain portions of the **"Premises"** and the grant of License related thereto as follows:

**LICENSE/LEASE TERMS AND CONDITIONS**

**1.    PURPOSE**

The **Licensor** operates an adult cabaret on the **Premises**, and Licensee, who is engaged in the independently established trade and occupation of professional exotic dance entertainment and who runs Licensee's own business that provides such entertainment services, desires to lease from the Club, jointly together with other similar entertainers and upon the terms contained in this Agreement, the right to use certain areas of the Premises for activities related to the presentation of live dance entertainment to the adult public.

**2.    GRANT OF LICENSE/LEASE RIGHT**

**Licensee** hereby licenses from the **Licensor** the right during normal business hours of **Licensor** to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Licensor** for the performing of live erotic dance entertainment and related activities, upon the terms and conditions contained in this Agreement. The **Licensor** hereby grants **Licensee** a temporary, revocable license (the "License") and non-exclusive right to use and occupy the designated portions of the **Premises** (the "Temporary Space Lease" or the "Lease") commencing on the Agreement Commencement Date and continuing until the Termination Date, defined herein, subject

_AP_
Licensee's Initials

EXHIBIT
2

Page 1 of 11

to the terms and conditions contained herein.

This License shall be limited to Licensee's use and occupancy of the Premises as an erotic entertainer/dancer and Licensee shall be entitled to perform such entertainment services at the Club. Licensee shall not use or occupy the Club or Premises or act or fail to act in any way which would constitute an event of default by Licensee under this Agreement.

3.    DURATION OF LICENSE AND TEMPORARY SPACE LEASE: TERMINATION OF LICENSE AND TEMPORARY SPACE LEASE

This Agreement shall be for the period commencing on the date it is signed by all parties (Agreement Commencement Date) and shall terminate on December 31 of the year of execution (unless the parties agree, in writing, to modify the term). The License shall thereafter be automatically extended for successive one year periods running from January 1 through December 31 of each year thereafter. Notwithstanding the foregoing, at any time after the first year of the License term, this License may be terminated (a) within thirty (30) days after the receipt of written termination notice from the Licensor to Licensee (b) the last day of the month that is ninety (90) days after the receipt of a written termination notice from Licensee to Licensor, or (c) such sooner date in accordance with paragraph 19 hereof, any such dates which shall be the "License Termination Date." Upon the License Termination Date, Licensee shall have no further right to use and occupy the Premises and the License and lease rights granted to Licensee shall terminate.

4.    LICENSOR'S ADDITIONAL OBLIGATIONS

In addition to leasing the Premises, the Club shall provide to Licensee, at the Club's expense:

A.    Music (including ASCAP/BMI/SESAC fees);

B.    Dressing Room Facilities;

C.    Lockers(as and if available);

D.    Wait Staff;

E.    Beverage Service; and

F.    Advertisement of the Club (any advertisement specific to the Licensee shall be at Licensee's sole cost and expense and the Club shall have no obligation to advertise for the Licensee);

5.    SUBLEASING/ASSIGNMENT

This Agreement is acknowledged to be personal in nature. This means that Licensee has no right to sublease or to assign any of Licensee's rights or obligations in this Agreement to any other person without the express written consent of the Club. However, if Licensee is unable to fulfill Licensee's contractual obligations during any scheduled set, Licensee shall have the right to substitute the services of any licensed entertainer who has also entered into a License and Lease Agreement with the Club. Licensee may substitute only one entertainer per scheduled set and for the complete length of the scheduled set (i.e. no partial set period substitution allowed). Any such substitution shall not, however, relieve Licensee of the rent, lost rent charge and/or contract damage obligations as contained in this Agreement if the substitute entertainer fails to pay any of those fees due as a result of the substitute's lease obligations. Licensor may assign Licensor's rights and obligations hereunder, but may not in doing so otherwise affect Licencee's License/Lease of the Premises.

6.    NON-EXCLUSIVITY

*AP*

Licensee's Initials

Licensee's obligations under this Agreement are nonexclusive, meaning that Licensee is free to perform Licensee's entertainment activities at other businesses or at locations other than at the Club's Premises.

**7.    USE OF PREMISES**

Licensee agrees to:

A.    Perform clothed, semi-nude ( i. e. "topless") or nude  (whichever is permitted by law) erotic, expressive dance entertainment at the Premises (but only in the manner and attire allowed under applicable law);

B.    Obtain, keep in full force and effect, and have in Licensee's possession at all times while Licensee is on the Premises and available for inspection as may be required by law, any and all required licenses and/or permits and provide the Club with all necessary, current and accurate information about the Licensee required by law for the Club to maintain. The failure of Licensee to maintain current and in Licensee's possession a required license and/or permit shall not relieve Licensee of Licensee's rent obligations as provided for in this Agreement;

C.    Not violate any federal, state, or local laws or governmental regulations. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

D.    Become knowledgeable of all laws and governmental regulations that apply to Licensee's conduct while on the Premises and comply therewith and in particular, of all regulations and laws related to businesses that provide alcoholic beverages, businesses that are defined as sexually oriented businesses and the Texas Penal Code. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

E.    Maintain accurate daily records of all income, including tips, earned while performing on the Premises, in accordance with all federal, state, and local taxation laws and this Agreement;

F.    Pay for any damages Licensee causes to the Premises and/or to any of the Club's personal property, furniture, fixtures, inventory, stock and/or equipment, normal wear and tear excepted; and

G.    Conduct his or herself in a manner consistent with normal civil decorum, decency and etiquette in dealings inside the Premises and with customers and other independent contractors and employees therein. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such conduct requirements is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

Licensee shall not use the name, logo, trademarks, service marks of Licensor without prior written authorization of the Licensor.

**8.    NATURE OF PERFORMANCE**

The Club has no right to direct or control the nature, content, character, manner or means of Licensee's entertainment services or of Licensee's performances.

EXCEPT AS MAY IN WRITING BE SPECIFICALLY RELEASED, WAIVED OR TRANSFERRED, SO LONG AS

*AP*
_____

Licensee's Initials                                                                                    Page 3 of 11

THE RELATIONSHIP BETWEEN LICENSEE AND THE CLUB IS THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE. LICENSEE SHALL OWN AND RETAIN ALL INTELLECTUAL PROPERTY RIGHTS OF LICENSEE'S ENTERTAINMENT PERFORMANCES, INCLUDING BUT NOT LIMITED TO ALL COPYRIGHTS AND RIGHTS OF PUBLICITY. ALL OF THESE RIGHTS BECOME THE PROPERTY OF THE CLUB, HOWEVER, IF THE RELATIONSHIP IS EVER CHANGED TO THAT OF EMPLOYER AND EMPLOYEE.

**9.    COSTUMES**

Licensee shall supply all of Licensee's own costumes and wearing apparel, which must comply with all applicable laws. The Club shall not control in any way the choice of costumes and/or wearing apparel made by Licensee.

**10.   NATURE OF BUSINESS**

Licensee understands: 1) That the nature of the business operated at the Premises is that of adult entertainment; 2) that Licensee may be subjected to either full or partial nudity and explicit language; and 3) that Licensee may be subjected to advances by customers, to depictions or portrayals of a sexual nature, and to similar types of behavior. Licensee represents that Licensee is not, and will not be, offended by such conduct, depictions, portrayals, and language, and that Licensee assumes any and all risks associated with being subjected to these matters.

**11.   PRIVACY**

Licensee and the Club acknowledge that privacy and personal safety are important concerns to Licensee. Accordingly, the Club shall not knowingly disclose to any persons who are not associated with the Club, or to any governmental entity, department, or agency, either the legal name of the Licensee, Licensee's address, or telephone number, EXCEPT upon prior written authorization of the Licensee or as may be required by law.

**12.   ENTERTAINMENT FEES**

Based upon local industry custom and practice and in consultation with entertainers who lease space on the Premises, the Club shall establish a fixed fee for the price of certain performances engaged in on the Premises (referred to as "**Entertainment Fees**"). Currently, the parties agree that the **Entertainment Fee** is that amount as set out in the **Specifications** attachment hereto. Licensee agrees not to charge a customer more or less than the fixed price for any such performance unless the Licensee notifies the Club in writing of any charges to Licensee's customers of a higher or lower amount. Nothing contained in this Agreement, however, shall limit Licensee from receiving "tips" and/or gratuities over-and-above the established price for such performances. THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR OBTAINING THE SERVICE OF A PERSONAL ENTERTAINMENT PERFORMANCE

**13.   BUSINESS RELATIONSHIP OF PARTIES**

A.    The parties acknowledge that the business relationship created between the Club and Licensee is that of (a) Licensor/Licensee and (b) landlord and tenant for the joint and non-exclusive leasing of the Premises (meaning that other entertainers are also leasing the premises at the same time), and that this relationship is a material (meaning significant) part of this Agreement. THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and agree that this Agreement shall not be interpreted as creating an employer/employee relationship or any contract for employment. LICENSEE UNDERSTANDS THAT THE CLUB WILL NOT PAY LICENSEE ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS

B.    The Club and Licensee acknowledge that if the relationship between them was that of employer and employee,

*AP*

Licensee's Initials                                                                                      Page 4 of 11

the Club would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Licensee. LICENSEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IN THE CIRCUMSTANCE OF AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE** PROPERTY OF THE CLUB **AND WOULD** NOT **BE THE PROPERTY OF LICENSEE.** THE PARTIES ACKNOWLEDGE THAT LICENSEE'S RIGHT TO OBTAIN AND KEEP ENTERTAINMENT FEES PURSUANT TO THIS AGREEMENT IS SPECIFICALLY CONTINGENT AND CONDITIONED UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE.

C.      The parties additionally acknowledge that were the relationship between them to be that of employer and employee, Licensee's employment would be "at will" (meaning Licensee could be fired at any time without cause and without prior notice or warning), and that the Club would be entitled to control, among other things, Licensee's: Work schedule and the hours of work; job responsibilities; physical presentation (such as make-up, hairstyle, etc.); costumes and other wearing apparel; work habits; the selection of Licensee's customers; the nature, content, character, manner and means of Licensee's performances; and Licensee's ability to perform at other locations and for other businesses. Licensee hereby represents that Licensee desires to be able to make all of these choices for Licensee and without the control of the Club, and the Club and Licensee agree by the terms of this Agreement that all such decisions are exclusively reserved to the control of Licensee. LICENSEE FURTHER SPECIFICALLY REPRESENTS THAT LICENSEE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS PARAGRAPH 13, BUT, RATHER, LICENSEE DESIRES TO PERFORM AS A LICENSEE/TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS AGREEMENT.

D.      If any court, tribunal, or governmental agency determines, or if Licensee at any time contends, claims, or asserts, that the relationship between the parties is something other than that of Licensor/Lessor and Licensee/Lessee and that Licensee is then entitled to the payment of monies from the Club, all of the following shall apply:

   (i)      In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Licensee is not unjustly enriched by the parties having financially operated pursuant to the terms of this Agreement, the Club and Licensee agree that Licensee shall surrender, reimburse and pay to the Club, all Entertainment Fees received by Licensee at any time Licensee performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Licensee under the terms of this Agreement- and shall immediately provide a full accounting to the Club of all tip income which Licensee received during that time;

   (ii)     Any Entertainment Fees that Licensee refuses to return to the Club shall be deemed service charges to the customer and shall be accounted for by the Club as such. Licensee shall owe the Club the amount of such Entertainment Fees and as such, the Club shall then be entitled to full wage credit for all Entertainment Fees retained by Licensee, and such withheld fees shall therefore constitute wages paid from the Club to Licensee. In the event that Licensee refuses to return Entertainment Fees to the Club, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income consistent with this subparagraph;

   (iii)    If despite Licencee's express obligation hereunder to maintain accurate records, the Licensee is unable or unwilling to provide the Club with reliable documentation of all Entertainment Fees received by Licensee at any time Licencee performed on the premises, Licensee and the Club hereby stipulate and agree that the amount of Entertainment Fees received by

*AP*

Licensee's Initials

Licensee shall be deemed to be an amount in excess of any minimum hourly wage to which Licensee would be entitled as an employee.

(iv)     The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in this paragraph.

(v)      If at any time Licensee believes that, irrespective of the terms of this Agreement, Licensee is being treated as an employee by the Club or that Licencee's relationship with the Club is truly that of an employee, Licensee shall immediately, but in no event later than three business days thereafter, provide notice to the Club in writing of Licensee's demand to be fully treated as an employee consistent with the terms of this paragraph and applicable law, and shall also within the same time period begin reporting all of Licensee's tip income to the Club on a daily basis; such tip reporting being required of all tipped employees of the Club under the terms of the Internal Revenue Code.

## 14.   TAXES

Licensee shall be solely responsible for, and shall pay, all federal, state, and local taxes and contributions imposed upon any income earned by Licensee while performing on the Premises (including but not limited to income taxes and social security obligations). Licensee shall indemnify and hold harmless the Club from any such taxes. Licensee shall keep all required records and supporting proof thereof.

## 15.   SCHEDULING OF LEASE DATES

Licensee shall select, at least one week in advance, any and all days that Licensee desires to lease the Premises during the following week, and the Club shall make the leased portion of the Premises available to Licensee during those dates and times, subject only to space availability. Should Licensee desire not to perform on the Premises at all during any given week, Licensee shall give the Club notice of this at least one week in advance. Once scheduled, neither Licensee nor the Club shall have the right to cancel or change any scheduled performance dates except as may be agreed to by Licensee and the Club. For each day that Licensee schedules him or herself to perform, Licensee agrees to be on the Premises, available to perform, for a minimum number of consecutive hours as stated in the "SPECIFICATIONS" section on the last page of this Agreement (one "set"). During those weeks that Licensee desires to perform, Licensee agrees to lease space at the Premises for at least the minimum number of sets per week as stated in the "SPECIFICATIONS" section of this Agreement. Licensee may be permitted to lease space on the Premises on days when Licensee has not scheduled him or herself to perform, subject to space availability.

If Licensee misses an entire scheduled set, Licensee shall pay to the Club as a lost rent charge, a fee for each set missed as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of Licensee's next set. If Licensee fails to timely commence a scheduled set, Licensee shall pay to the Club as contract damages $8.00 for each one-half hour missed up to a maximum of the lost rent charge as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of that set. All lost rent charges and contract damages stated in this Agreement are established in view of the fact that it would be difficult to determine the exact lost rent or damage incurred as a result of certain breaches of the terms of this Agreement.

## 16.   RENT

Licensee agrees to pay rent to the Club (referred to as "set rent") in the amounts as stated in the "SPECIFICATIONS" section of this Agreement. All set rent shall be paid immediately on or before completion of any set.

## 17.   MATERIAL BREACH BY CLUB

_AP_

Licensee's Initials

The Club materially breaches this Agreement by:

    A.    Failing to provide to Licensee the leased portion of the Premises on any day as scheduled by Licensee;

    B.    Failing to maintain any and all required and available licenses and/or permits;

    C.    Failing to maintain in full force any and all leases and subleases with the owner of the Premises;

    D.    Failing to maintain in full force all utilities services for the Premises; and

    E.    Failing to maintain the Premises in a safe and orderly manner.

The Club shall not be liable for any material breach as set forth in this paragraph due to acts of God, to any other cause beyond the reasonable control of the Club, or as a result of the action of any government entity or agency or the interpretation thereby of any law rule or regulation affecting the Club.

## 18.    MATERIAL BREACH BY LICENSEE

Licensee materially breaches this Agreement by:

Failing to maintain any and all required licenses and/or permits;

Willfully violating any federal, state, or local law or regulation while on the Premises;

Failing to appear for a scheduled set on two or more occasions in any one calendar month without proving a proper substitute as allowed and in the manner provided for herein;

Failing to pay any set rent when due;

Failing to timely pay any assessed lost rent charges or contract damages;

Claiming the business relationship with the Club as being other than that of a landlord and tenant;

Violating any public health or safety rules or concerns; or

Violating any of the provisions of this Agreement.

## 19.    TERMINATION/BREACH /DEFAULT

In the event Licensee shall be in default of any obligation to pay money under this Agreement or in the event Licensee shall be in default of any non-monetary provision of this Agreement (including but not limited to violation any Federal, state or local laws or regulations), the License granted to Licensee herein shall immediately terminate, and Licensor shall have the right to the extent permitted by law, to (i) immediately withdraw the permission hereby granted to Licensee to use the Premises; and (ii) remove all persons and property therefrom, without being deemed to have committed any manner of trespass, assault or false imprisonment. Such remedies shall be in addition to any other rights or remedies Licensor may have hereunder or at law or equity.

In the event Licensor shall be in default of Licensor's obligations hereunder, Licensee's sole remedy is to terminate this Agreement.

Either party may terminate this Agreement, without cause, upon thirty (30) days notice to the other party. Upon material

*AP*

Licensee's Initials

breach, the non-breaching party may terminate this Agreement upon twenty-four (24) hours notice to the other party, or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Licensee to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws, regulations, or public health or safety rules or concerns.

## 20. SEVERABILITY

If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. In the event that any term, paragraph, subparagraph, or portion of this Agreement is declared to be illegal or unenforceable, this Agreement shall, to the extent possible, be interpreted as if that provision was not a part of this Agreement; it being the intent of the parties that any illegal or unenforceable portion of this Agreement, to the extent possible, be severable from this Agreement as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Licensee and the Club is something other than that of landlord and tenant, the relationship between Licensee and the Club shall be controlled by the provisions of this Agreement.

## 21. GOVERNING LAW

This Agreement shall be interpreted pursuant to the laws of the State of Texas

## 22. ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS

The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement. as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section 22. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own attorneys fees, expenses and costs in any arbitration except for the fees of the arbitrator as specifically provided for in this Section 22. The arbitrator will have no authority to make an award of attorneys fees, expenses and costs in any arbitration except to make an award for the fees charged by the arbitrator. The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be IN THE COUNTY IN TEXAS IN WHICH THE PREMISES IS LOCATED. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 22 in which event the provisions of this Section 22 shall control.

**THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PARTIES WAIVE ANY RIGHT TO HAVE ANY CLAIM BETWEEN THEM ARBITRATED ON A CLASS OR COLLECTIVE ACTION BASIS AND THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS BETWEEN THE PARTIES TO BE ARBITRATED ON A CLASS ACTION BASIS NOR ON A COLLECTIVE ACTION BASIS. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT**

*AP*

Licensee's Initials

ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. **THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA.**

FOR ANY CLAIMS OF THE LICENSEE BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS OR COLLECTIVE GROUP CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS OR COLLECTIVE GROUP AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF LICENSEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

This Agreement to arbitrate shall apply to claims or disputes that are asserted by either party hereto against third parties when the basis of such dispute or the claims raised by a party hereto are, or arise from, disputes that are required to be arbitrated under this Agreement. Such applies to claims made against officers, directors, shareholders, and/or employees of any corporate party, any alleged joint actors, or based on any legal theory, claim or right that a third party is liable for the actions or obligations of a party to this Agreement.

The parties agree that if any party refuses to proceed to arbitration of a claim subject to arbitration herein upon request or demand that they do so, that party refusing to go to arbitration shall be liable to the requesting/demanding party for all fees and cost incurred in compelling arbitration.

ARBITRATION SHALL BE THE SOLE FORUM TO DETERMINE THE VALIDITY, SCOPE AND BREATH OF THIS AGREEMENT.

23.   MISCELLANEOUS

This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement and the Specification attachment hereto, provided however, if this Agreement is not the initial Agreement on this subject matter executed by the parties, the parties have also executed contemporaneously with the execution of this Agreement, a "Mutual Release of Claims" which is part and parcel of the Parties' agreement and made a part hereof, the same as if fully copied and set out at length herein.

No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement.

The Club's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement.

This Agreement may not be modified or amended except in accordance with a writing signed by each of the parties hereto.

*AP*
Licensee's Initials

Sections/Paragraphs 1,6,11,12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, and 25 shall survive the termination of this Agreement.

The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matters to be considered in construing the terms of this Agreement.

Time is of the essence in the performance of this Agreement.

This Agreement may be executed in multiple original counterparts, in such event each of which shall be deemed an original, but which together shall constitute one and the same instrument.

Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural and vice versa, unless the context requires otherwise.

If any time period or deadline hereunder expires on a Saturday, Sunday or legal holiday recognized in the State of Texas, the time period or deadlines shall be extended to the first business day thereafter.

The effective date of this Agreement shall be upon the date it is signed by all parties.

Nothing herein shall be construed or constitute a partnership or joint venture between the parties hereto.

This Agreement shall be binding upon and shall inure to the benefit of Licensor and Licensee and their respective legal representatives, successors and assigns.

If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

All parties will do all things reasonably necessary or appropriate to fulfill the terms and conditions of this Agreement, including the execution of all necessary documents pertaining thereto.

BECAUSE OF LEGAL RESTRICTIONS, THE **CLUB** WILL NOT ENTER INTO A AGREEMENT WITH AN **LICENSEE** WHO IS UNDER THE AGE OF EIGHTEEN (18) AND THIS AGREEMENT IS NULL AND VOID IF **LICENSEE** IS NOT OF SUCH AGE. **LICENSEE** SPECIFICALLY REPRESENTS THAT **LICENSEE** IS OF THIS LAWFUL AGE OR OLDER, THAT **LICENSEE** HAS PROVIDED APPROPRIATE IDENTIFICATION VERIFYING **LICENSEE'S** AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

BY SIGNING THIS DOCUMENT, **LICENSEE** REPRESENTS THAT **LICENSEE** HAS RECEIVED A COPY OF, AND HAS FULLY READ THIS AGREEMENT; THAT **LICENSEE** UNDERSTANDS, AND AGREES TO BE BOUND BY, ALL OF ITS TERMS; AND THAT **LICENSEE** HAS BEEN PERMITTED TO ASK QUESTIONS REGARDING ITS CONTENTS AND HAS BEEN GIVEN THE OPPORTUNITY TO HAVE IT REVIEWED BY PERSONS OF **LICENSEE'S** CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

## 24.     RELEASE FROM LIABILITY

Licensee agrees that Licensor shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except Licensor's willful misconduct. Licensee shall not hold Licensor in any way responsible or liable therefore and will indemnify and hold Licensor harmless - from and against any and all claims, liabilities, penalties, damages, judgements and expenses (including, without limitation, reasonable attorneys fees and disbursements) arising from injury to person or property of any nature

*AP*

Licensee's Initials

Page 10 of 11

arising out of Licensee's use or occupancy of the Premises and also for any other matter arising out of Licensee's use or occupancy of the Premises including damage or injury caused by Licensee.

### 25. CONFIDENTIALITY

Licensor and Licensee acknowledge that each may come into contact with information in all forms regarding the other's business, clients and clients' businesses. All such information shall be deemed confidential information and shall not be used or communicated by the other at any time for any reason whatsoever.

### 26. NOTICES

Any notices required or permitted to be given to either party under this Agreement shall be given to the representative parties at the address written provided in this Agreement by hand, by reputable overnight courier (for next business day delivery) or by Certified mail, return receipt requested. Such notices shall be deemed given upon: a) delivery, in the case of hand delivery; b) one business day after mailing in the case of overnight courier, and c) three business days after mailing, in the case of mailing.

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. ANY NEGOTIATED CHANGES TO THIS CONTRACT MUST BE INITIALED BY BOTH PARTIES IN THE MARGINS DIRECTLY NEXT TO THE MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

**AGREED TO AND ACKNOWLEDGED BY:**

ARIANNES PARRA

Licensee (Legal name of Licensee)
Date: 11/30/15
Address(City State Zip) 9800 TOWN PALIL
Phone 346 - 303 - 2842
email address _____
Permit Number _____

Witness & Authorized Representative of the
Licensor, Michael's International.
Date: 11 · 30 · 11

AP
Licensee's Initials

## SPECIFICATIONS

The agreed minimum number of "Sets" per week is 3.

Each Scheduled performance day "Set" shall consist of either (a) an eight (8) consecutive hour period for day shift (11:00 a.m. to 7:00 p.m.), (b) a seven (7) consecutive hour period for night shift (7:00 p.m. to 2:00 a.m.), or (c) an eight (8) consecutive hour period for "cross" shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.).

The agreed Rental charges OR "SET FEES" for day shift (11:00 a.m. to 7:00 p.m.) is $5.00 per shift/set.
The agreed Rental charges OR "SET FEES" for night shift (7:00 p.m. to 2:00 a.m.), is $15.00 per shift,
The agreed Rental charges OR "SET FEES" for cross shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.) is $15.00 per shift.

The agreed "loss rental fee" is an amount equal to the above rental charge/Set Fee applicable for the set missed.

The agreed current industry customary Entertainment Fee for a private performance/table dance is $20.00 per dance.

ARZANNIS  PALLA                          Date: 11/30/15
Licensee
Name:

_____                  Date: 11 · 30 r 15
Witness & Authorized Representative of the Licensor

## LICENSE AND LEASE AGREEMENT

### NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS CONTRACT – READ IT!

AGREEMENT COMMENCEMENT DATE: ___4 /25 /16___

LICENSOR: Michael's International (the "Club" or "Licensor")

LICENSEE NAME: ___ALIANCIS PARRA NASIAARA___ ("Licensee")

LICENSEE Stage Name: ___YANET___

PREMISE(s): 6440 Southwest Freeway, Houston, Harris County, Texas

LICENSEE ACKNOWLEDGES THAT LICENSEE HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED TERMS AND CONDITIONS IN ITS ENTIRETY, THAT LICENSEE HAS BEEN GIVEN AN OPPORTUNITY TO ASK LICENSOR QUESTIONS ABOUT IT OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT LICENSEE HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF LICENSEE'S CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. LICENSEE ACKNOWLEDGES THAT LICENSEE UNDERSTANDS THE TERM AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.

THIS AGREEMENT REPLACES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE "MEETING OF THE MINDS" SHOULD HAVE BEEN WHEN THE PARTIES ESTABLISHED THEIR RELATIONSHIP, THE TERMS AND CONDITIONS HEREIN ARE DEEMED EFFECTIVE FROM THE DATE OF ANY PRIOR AGREEMENT BETWEEN THE PARTIES, SHOULD ONE EXIST.

This AGREEMENT is entered into by the "LICENSOR" and "LICENSEE" for the leasing of certain portions of the "Premises" and the grant of License related thereto as follows:

### LICENSE/LEASE TERMS AND CONDITIONS

#### 1. PURPOSE

The Licensor operates an adult cabaret on the Premises, and Licensee, who is engaged in the independently established trade and occupation of professional exotic dance entertainment and who runs Licensee's own business that provides such entertainment services, desires to lease from the Club, jointly together with other similar entertainers and upon the terms contained in this Agreement, the right to use certain areas of the Premises for activities related to the presentation of live dance entertainment to the adult public.

#### 2. GRANT OF LICENSE/LEASE RIGHT

Licensee hereby licenses from the Licensor the right during normal business hours of Licensor to jointly, along with other entertainers, use the stage areas and certain other portions of the Premises designated by the Licensor for the performing of live erotic dance entertainment and related activities, upon the terms and conditions contained in this Agreement. The Licensor hereby grants Licensee a temporary, revocable license (the "License") and non-exclusive right to use and occupy the designated portions of the Premises (the "Temporary Space Lease" or the "Lease") commencing on the Agreement Commencement Date and continuing until the Termination Date, defined herein, subject

_APM._
Licensee's Initials

Page 1 of 11

EXHIBIT
2

to the terms and conditions contained herein.

This License shall be limited to Licensee's use and occupancy of the Premises as an erotic entertainer/dancer and Licensee shall be entitled to perform such entertainment services at the Club. Licensee shall not use or occupy the Club or Premises or act or fail to act in any way which would constitute an event of default by Licensee under this Agreement.

**3.     DURATION OF LICENSE AND TEMPORARY SPACE LEASE: TERMINATION OF LICENSE AND TEMPORARY SPACE LEASE**

This Agreement shall be for the period commencing on the date it is signed by all parties (Agreement Commencement Date) and shall terminate on December 31 of the year of execution (unless the parties agree, in writing, to modify the term). The License shall thereafter be automatically extended for successive one year periods running from January 1 through December 31 of each year thereafter. Notwithstanding the foregoing, at any time after the first year of the License term, this License may be terminated (a) within thirty (30) days after the receipt of written termination notice from the Licensor to Licensee (b) the last day of the month that is ninety (90) days after the receipt of a written termination notice from Licensee to Licensor, or (c) such sooner date in accordance with paragraph 19 hereof, any such dates which shall be the "License Termination Date." Upon the License Termination Date, Licensee shall have no further right to use and occupy the Premises and the License and lease rights granted to Licensee shall terminate.

**4.     LICENSOR'S ADDITIONAL OBLIGATIONS**

In addition to leasing the Premises, the Club shall provide to Licensee, at the Club's expense:

   A.     Music (including ASCAP/BMI/SESAC fees);

   B.     Dressing Room Facilities;

   C.     Lockers(as and if available);

   D.     Wait Staff;

   E.     Beverage Service; and

   F.     Advertisement of the Club (any advertisement specific to the Licensee shall be at Licensee's sole cost and expense and the Club shall have no obligation to advertise for the Licensee);

**5.     SUBLEASING/ASSIGNMENT**

This Agreement is acknowledged to be personal in nature. This means that Licensee has no right to sublease or to assign any of Licensee's rights or obligations in this Agreement to any other person without the express written consent of the Club. However, if Licensee is unable to fulfill Licensee's contractual obligations during any scheduled set, Licensee shall have the right to substitute the services of any licensed entertainer who has also entered into a License and Lease Agreement with the Club. Licensee may substitute only one entertainer per scheduled set and for the complete length of the scheduled set (i.e. no partial set period substitution allowed). Any such substitution shall not, however, relieve Licensee of the rent, lost rent charge and/or contract damage obligations as contained in this Agreement if the substitute entertainer fails to pay any of those fees due as a result of the substitute's lease obligations. Licensor may assign Licensor's rights and obligations hereunder, but may not in doing so otherwise affect Licensee's License/Lease of the Premises.

**6.     NON-EXCLUSIVITY**

<u>AP M</u>
Licensee's Initials

Licensee's obligations under this Agreement are nonexclusive, meaning that Licensee is free to perform Licensee's entertainment activities at other businesses or at locations other than at the Club's Premises.

## 7.   USE OF PREMISES

Licensee agrees to:

    A.    Perform clothed, semi-nude ( i. e. "topless") or nude  (whichever is permitted by law) erotic, expressive dance entertainment at the Premises (but only in the manner and attire allowed under applicable law);

    B.    Obtain, keep in full force and effect, and have in Licensee's possession at all times while Licensee is on the Premises and available for inspection as may be required by law, any and all required licenses and/or permits and provide the Club with all necessary, current and accurate information about the Licensee required by law for the Club to maintain. The failure of Licensee to maintain current and in Licensee's possession a required license and/or permit shall not relieve Licensee of Licensee's rent obligations as provided for in this Agreement;

    C.    Not violate any federal, state, or local laws or governmental regulations. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

    D.    Become knowledgeable of all laws and governmental regulations that apply to Licensee's conduct while on the Premises and comply therewith and in particular, of all regulations and laws related to businesses that provide alcoholic beverages, businesses that are defined as sexually oriented businesses and the Texas Penal Code. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such laws or regulations is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

    E.    Maintain accurate daily records of all income, including tips, earned while performing on the Premises, in accordance with all federal, state, and local taxation laws and this Agreement;

    F.    Pay for any damages Licensee causes to the Premises and/or to any of the Club's personal property, furniture, fixtures, inventory, stock and/or equipment, normal wear and tear excepted; and

    G.    Conduct his or herself in a manner consistent with normal civil decorum, decency and etiquette in dealings inside the Premises and with customers and other independent contractors and employees therein. Licensee acknowledges, understands and agrees that any conduct by Licensee which is in violation of any such conduct requirements is beyond the scope of Licensee's authority pursuant to this Agreement, and constitutes a material breach of the terms of this Agreement;

Licensee shall not use the name, logo, trademarks, service marks of Licensor without prior written authorization of the Licensor.

## 8.   NATURE OF PERFORMANCE

The Club has no right to direct or control the nature, content, character, manner or means of Licensee's entertainment services or of Licensee's performances.

<u>EXCEPT AS MAY IN WRITING BE SPECIFICALLY RELEASED, WAIVED OR TRANSFERRED, SO LONG AS</u>

_APM_

Licensee's Initials

THE RELATIONSHIP BETWEEN LICENSEE AND THE CLUB IS THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE. LICENSEE SHALL OWN AND RETAIN ALL INTELLECTUAL PROPERTY RIGHTS OF LICENSEE'S ENTERTAINMENT PERFORMANCES, INCLUDING BUT NOT LIMITED TO ALL COPYRIGHTS AND RIGHTS OF PUBLICITY. ALL OF THESE RIGHTS BECOME THE PROPERTY OF THE CLUB, HOWEVER, IF THE RELATIONSHIP IS EVER CHANGED TO THAT OF EMPLOYER AND EMPLOYEE.

**9.     COSTUMES**

Licensee shall supply all of Licensee's own costumes and wearing apparel, which must comply with all applicable laws. The Club shall not control in any way the choice of costumes and/or wearing apparel made by Licensee.

**10.    NATURE OF BUSINESS**

Licensee understands: 1) That the nature of the business operated at the Premises is that of adult entertainment; 2) that Licensee may be subjected to either full or partial nudity and explicit language; and 3) that Licensee may be subjected to advances by customers, to depictions or portrayals of a sexual nature, and to similar types of behavior. Licensee represents that Licensee is not, and will not be, offended by such conduct, depictions, portrayals, and language, and that Licensee assumes any and all risks associated with being subjected to these matters.

**11.    PRIVACY**

Licensee and the Club acknowledge that privacy and personal safety are important concerns to Licensee. Accordingly, the Club shall not knowingly disclose to any persons who are not associated with the Club, or to any governmental entity, department, or agency, either the legal name of the Licensee, Licensee's address, or telephone number, EXCEPT upon prior written authorization of the Licensee or as may be required by law.

**12.    ENTERTAINMENT FEES**

Based upon local industry custom and practice and in consultation with entertainers who lease space on the Premises, the Club shall establish a fixed fee for the price of certain performances engaged in on the Premises (referred to as "Entertainment Fees"). Currently, the parties agree that the Entertainment Fee is that amount as set out in the Specifications attachment hereto. Licensee agrees not to charge a customer more or less than the fixed price for any such performance unless the Licensee notifies the Club in writing of any charges to Licensee's customers of a higher or lower amount. Nothing contained in this Agreement, however, shall limit Licensee from receiving "tips" and/or gratuities over-and-above the established price for such performances. THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR OBTAINING THE SERVICE OF A PERSONAL ENTERTAINMENT PERFORMANCE

**13.    BUSINESS RELATIONSHIP OF PARTIES**

**A.**     The parties acknowledge that the business relationship created between the Club and Licensee is that of (a) Licensor/Licensee and (b) landlord and tenant for the joint and non-exclusive leasing of the Premises (meaning that other entertainers are also leasing the premises at the same time), and that this relationship is a material (meaning significant) part of this Agreement. THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and agree that this Agreement shall not be interpreted as creating an employer/employee relationship or any contract for employment. LICENSEE UNDERSTANDS THAT THE CLUB WILL NOT PAY LICENSEE ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS

**B.**     The Club and Licensee acknowledge that if the relationship between them was that of employer and employee,

Licensee's Initials

Page 4 of 11

the Club would be required to collect, and would retain, all **Entertainment Fees** paid by customers to Licensee. LICENSEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IN THE CIRCUMSTANCE OF AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE <u>PROPERTY OF THE CLUB</u> AND WOULD <u>NOT</u> BE THE PROPERTY OF LICENSEE. <u>THE PARTIES ACKNOWLEDGE THAT LICENSEE'S RIGHT TO OBTAIN AND KEEP ENTERTAINMENT FEES PURSUANT TO THIS AGREEMENT IS SPECIFICALLY CONTINGENT AND CONDITIONED UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LICENSOR/LESSOR AND LICENSEE/LESSEE.</u>

C.    The parties additionally acknowledge that were the relationship between them to be that of employer and employee, Licensee's employment would be "at will" (meaning Licensee could be fired at any time without cause and without prior notice or warning), and that the Club would be entitled to control, among other things, Licensee's: Work schedule and the hours of work; job responsibilities; physical presentation (such as make-up, hairstyle, etc.); costumes and other wearing apparel; work habits; the selection of Licensee's customers; the nature, content, character, manner and means of Licensee's performances; and Licensee's ability to perform at other locations and for other businesses. Licensee hereby represents that Licensee desires to be able to make all of these choices for Licensee and without the control of the Club, and the Club and Licensee agree by the terms of this Agreement that all such decisions are exclusively reserved to the control of Licensee. <u>LICENSEE FURTHER SPECIFICALLY REPRESENTS THAT LICENSEE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS PARAGRAPH 13, BUT, RATHER LICENSEE DESIRES TO PERFORM AS A LICENSEE/TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS AGREEMENT.</u>

D.    If any court, tribunal, or governmental agency determines, or if Licensee at any time contends, claims, or asserts, that the relationship between the parties is something other than that of Licensor/Lessor and Licensee/Lessee and that Licensee is then entitled to the payment of monies from the Club, all of the following shall apply:

        (i)    In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Licensee is not unjustly enriched by the parties having financially operated pursuant to the terms of this Agreement, the Club and Licensee agree that Licensee shall surrender, reimburse and pay to the Club, all **Entertainment Fees** received by Licensee at any time Licensee performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Licensee under the terms of this Agreement- and shall immediately provide a full accounting to the Club of all tip income which Licensee received during that time;

        (ii)    Any **Entertainment Fees** that Licensee refuses to return to the Club shall be deemed service charges to the customer and shall be accounted for by the Club as such. Licensee shall owe the Club the amount of such **Entertainment Fees** and as such, the Club shall then be entitled to full wage credit for all **Entertainment Fees** retained by Licensee, and such withheld fees shall therefore constitute wages paid from the Club to Licensee. In the event that Licensee refuses to return **Entertainment Fees** to the Club, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income consistent with this subparagraph;

        (iii)    If despite Licensee's express obligation hereunder to maintain accurate records, the Licensee is unable or unwilling to provide the Club with reliable documentation of all **Entertainment Fees** received by Licensee at any time Licensee performed on the premises, Licensee and the Club hereby stipulate and agree that the amount of **Entertainment Fees** received by

Licensee's Initials

Licensee shall be deemed to be an amount in excess of any minimum hourly wage to which Licensee would be entitled as an employee.

(iv)    The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in this paragraph.

(v)    If at any time Licensee believes that, irrespective of the terms of this Agreement, Licensee is being treated as an employee by the Club or that Licencee's relationship with the Club is truly that of an employee, Licensee shall immediately, but in no event later than three business days thereafter, provide notice to the Club in writing of Licensee's demand to be fully treated as an employee consistent with the terms of this paragraph and applicable law, and shall also within the same time period begin reporting all of Licensee's tip income to the Club on a daily basis; such tip reporting being required of all tipped employees of the Club under the terms of the Internal Revenue Code.

## 14.  TAXES

Licensee shall be solely responsible for, and shall pay, all federal, state, and local taxes and contributions imposed upon any income earned by Licensee while performing on the Premises (including but not limited to income taxes and social security obligations). Licensee shall indemnify and hold harmless the Club from any such taxes. Licensee shall keep all required records and supporting proof thereof.

## 15.  SCHEDULING OF LEASE DATES

Licensee shall select, at least one week in advance, any and all days that Licensee desires to lease the Premises during the following week, and the Club shall make the leased portion of the Premises available to Licensee during those dates and times, subject only to space availability. Should Licensee desire not to perform on the Premises at all during any given week, Licensee shall give the Club notice of this at least one week in advance. Once scheduled, neither Licensee nor the Club shall have the right to cancel or change any scheduled performance dates except as may be agreed to by Licensee and the Club. For each day that Licensee schedules him or herself to perform, Licensee agrees to be on the Premises, available to perform, for a minimum number of consecutive hours as stated in the "SPECIFICATIONS" section on the last page of this Agreement (one "set"). During those weeks that Licensee desires to perform, Licensee agrees to lease space at the Premises for at least the minimum number of sets per week as stated in the "SPECIFICATIONS" section of this Agreement. Licensee may be permitted to lease space on the Premises on days when Licensee has not scheduled him or herself to perform, subject to space availability.

If Licensee misses an entire scheduled set, Licensee shall pay to the Club as a lost rent charge, a fee for each set missed as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of Licensee's next set. If Licensee fails to timely commence a scheduled set, Licensee shall pay to the Club as contract damages $8.00 for each one-half hour missed up to a maximum of the lost rent charge as stated in the "SPECIFICATIONS" section of this Agreement, which is to be paid by Licensee to the Club no later than by the end of that set. All lost rent charges and contract damages stated in this Agreement are established in view of the fact that it would be difficult to determine the exact lost rent or damage incurred as a result of certain breaches of the terms of this Agreement.

## 16.  RENT

Licensee agrees to pay rent to the Club (referred to as "set rent") in the amounts as stated in the "SPECIFICATIONS" section of this Agreement. All set rent shall be paid immediately on or before completion of any set.

## 17.  MATERIAL BREACH BY CLUB

A?M

_____
Licensee's Initials

The Club materially breaches this Agreement by:

A. Failing to provide to Licensee the leased portion of the Premises on any day as scheduled by Licensee;

B. Failing to maintain any and all required and available licenses and/or permits;

C. Failing to maintain in full force any and all leases and subleases with the owner of the Premises;

D. Failing to maintain in full force all utilities services for the Premises; and

E. Failing to maintain the Premises in a safe and orderly manner.

The Club shall not be liable for any material breach as set forth in this paragraph due to acts of God, to any other cause beyond the reasonable control of the Club, or as a result of the action of any government entity or agency or the interpretation thereby of any law rule or regulation affecting the Club.

## 18. MATERIAL BREACH BY LICENSEE

Licensee materially breaches this Agreement by:

Failing to maintain any and all required licenses and/or permits;

Willfully violating any federal, state, or local law or regulation while on the Premises;

Failing to appear for a scheduled set on two or more occasions in any one calendar month without proving a proper substitute as allowed and in the manner provided for herein;

Failing to pay any set rent when due;

Failing to timely pay any assessed lost rent charges or contract damages;

Claiming the business relationship with the Club as being other than that of a landlord and tenant;

Violating any public health or safety rules or concerns; or

Violating any of the provisions of this Agreement.

## 19. TERMINATION/BREACH /DEFAULT

In the event Licensee shall be in default of any obligation to pay money under this Agreement or in the event Licensee shall be in default of any non-monetary provision of this Agreement (including but not limited to violation any Federal, state or local laws or regulations), the License granted to Licensee herein shall immediately terminate, and Licensor shall have the right to the extent permitted by law, to (i) immediately withdraw the permission hereby granted to Licensee to use the Premises; and (ii) remove all persons and property therefrom, without being deemed to have committed any manner of trespass, assault or false imprisonment. Such remedies shall be in addition to any other rights or remedies Licensor may have hereunder or at law or equity.

In the event Licensor shall be in default of Licensor's obligations hereunder, Licensee's sole remedy is to terminate this Agreement.

Either party may terminate this Agreement, without cause, upon thirty (30) days notice to the other party. Upon material

_APM_
Licensee's Initials

breach, the non-breaching party may terminate this Agreement upon twenty-four (24) hours notice to the other party, or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Licensee to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws, regulations, or public health or safety rules or concerns.

## 20. SEVERABILITY

If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. In the event that any term, paragraph, subparagraph, or portion of this Agreement is declared to be illegal or unenforceable, this Agreement shall, to the extent possible, be interpreted as if that provision was not a part of this Agreement; it being the intent of the parties that any illegal or unenforceable portion of this Agreement, to the extent possible, be severable from this Agreement as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Licensee and the Club is something other than that of landlord and tenant, the relationship between Licensee and the Club shall be controlled by the provisions of this Agreement.

## 21.   GOVERNING LAW

This Agreement shall be interpreted pursuant to the laws of the State of Texas

## 22.   ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS

The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section 22. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own attorneys fees, expenses and costs in any arbitration except for the fees of the arbitrator as specifically provided for in this Section 22. The arbitrator will have no authority to make an award of attorneys fees, expenses and costs in any arbitration except to make an award for the fees charged by the arbitrator. The arbitration provision contained herein shall be self-executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be IN THE COUNTY IN TEXAS IN WHICH THE PREMISES IS LOCATED. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 22 in which event the provisions of this Section 22 shall control.

**THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PARTIES WAIVE ANY RIGHT TO HAVE ANY CLAIM BETWEEN THEM ARBITRATED ON A CLASS OR COLLECTIVE ACTION BASIS AND THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS BETWEEN THE PARTIES TO BE ARBITRATED ON A CLASS ACTION BASIS NOR ON A COLLECTIVE ACTION BASIS. ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AT**

APN
Licensee's Initials

ARBITRATION. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY. THE PARTIES SHALL HAVE THE RIGHT TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARING AND TO CROSS-EXAMINE WITNESSES, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW PURSUANT TO THE FAA.

FOR ANY CLAIMS OF THE LICENSEE BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY OF ANY PART OF THIS LICENSE, AND ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT HE/SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS OR COLLECTIVE GROUP CREATED BY ANY COURT IN ANY PROCEEDING, HE/SHE WILL "OPT OUT" OF SUCH CLASS OR COLLECTIVE GROUP AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HIS/HER BEHALF LICENSEE SHALL WAIVE HIS/HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

This Agreement to arbitrate shall apply to claims or disputes that are asserted by either party hereto against third parties when the basis of such dispute or the claims raised by a party hereto are, or arise from, disputes that are required to be arbitrated under this Agreement. Such applies to claims made against officers, directors, shareholders, and/or employees of any corporate party, any alleged joint actors, or based on any legal theory, claim or right that a third party is liable for the actions or obligations of a party to this Agreement.

The parties agree that if any party refuses to proceed to arbitration of a claim subject to arbitration herein upon request or demand that they do so, that party refusing to go to arbitration shall be liable to the requesting/demanding party for all fees and cost incurred in compelling arbitration.

ARBITRATION SHALL BE THE SOLE FORUM TO DETERMINE THE VALIDITY, SCOPE AND BREATH OF THIS AGREEMENT.

23.    MISCELLANEOUS

This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement and the Specification attachment hereto, provided however, if this Agreement is not the initial Agreement on this subject matter executed by the parties, the parties have also executed contemporaneously with the execution of this Agreement, a "Mutual Release of Claims" which is part and parcel of the Parties' agreement and made a part hereof, the same as if fully copied and set out at length herein.

No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement.

The Club's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement.

This Agreement may not be modified or amended except in accordance with a writing signed by each of the parties hereto.

*APM*

Licensee's Initials

Sections/Paragraphs 1,6,11,12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, and 25 shall survive the termination of this Agreement.

The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matters to be considered in construing the terms of this Agreement.

Time is of the essence in the performance of this Agreement.

This Agreement may be executed in multiple original counterparts, in such event each of which shall be deemed an original, but which together shall constitute one and the same instrument.

Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural and vice versa, unless the context requires otherwise.

If any time period or deadline hereunder expires on a Saturday, Sunday or legal holiday recognized in the State of Texas, the time period or deadlines shall be extended to the first business day thereafter.

The effective date of this Agreement shall be upon the date it is signed by all parties.

Nothing herein shall be construed or constitute a partnership or joint venture between the parties hereto.

This Agreement shall be binding upon and shall inure to the benefit of Licensor and Licensee and their respective legal representatives, successors and assigns.

If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

All parties will do all things reasonably necessary or appropriate to fulfill the terms and conditions of this Agreement, including the execution of all necessary documents pertaining thereto.

BECAUSE OF LEGAL RESTRICTIONS, THE CLUB WILL NOT ENTER INTO A AGREEMENT WITH AN LICENSEE WHO IS UNDER THE AGE OF EIGHTEEN (18) AND THIS AGREEMENT IS NULL AND VOID IF LICENSEE IS NOT OF SUCH AGE. LICENSEE SPECIFICALLY REPRESENTS THAT LICENSEE IS OF THIS LAWFUL AGE OR OLDER, THAT LICENSEE HAS PROVIDED APPROPRIATE IDENTIFICATION VERIFYING LICENSEE'S AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

BY SIGNING THIS DOCUMENT, LICENSEE REPRESENTS THAT LICENSEE HAS RECEIVED A COPY OF, AND HAS FULLY READ THIS AGREEMENT; THAT LICENSEE UNDERSTANDS, AND AGREES TO BE BOUND BY, ALL OF ITS TERMS; AND THAT LICENSEE HAS BEEN PERMITTED TO ASK QUESTIONS REGARDING ITS CONTENTS AND HAS BEEN GIVEN THE OPPORTUNITY TO HAVE IT REVIEWED BY PERSONS OF LICENSEE'S CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

## 24.    RELEASE FROM LIABILITY

Licensee agrees that Licensor shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except Licensor's willful misconduct. Licensee shall not hold Licensor in any way responsible or liable therefore and will indemnify and hold Licensor harmless - from and against any and all claims, liabilities, penalties, damages, judgements and expenses (including, without limitation, reasonable attorneys fees and disbursements) arising from injury to person or property of any nature

Licensee's Initials

arising out of Licensee's use or occupancy of the Premises and also for any other matter arising out of Licensee's use or occupancy of the Premises including damage or injury caused by Licensee.

**25.    CONFIDENTIALITY**

Licensor and Licensee acknowledge that each may come into contact with information in all forms regarding the other's business, clients and clients' businesses. All such information shall be deemed confidential information and shall not be used or communicated by the other at any time for any reason whatsoever.

**26.    NOTICES**

Any notices required or permitted to be given to either party under this Agreement shall be given to the representative parties at the address written provided in this Agreement by hand, by reputable overnight courier (for next business day delivery) or by Certified mail, return receipt requested. Such notices shall be deemed given upon: a) delivery, in the case of hand delivery; b) one business day after mailing in the case of overnight courier, and c) three business days after mailing, in the case of mailing.

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. ANY NEGOTIATED CHANGES TO THIS CONTRACT MUST BE INITIALED BY BOTH PARTIES IN THE MARGINS DIRECTLY NEXT TO THE MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

**AGREED TO AND ACKNOWLEDGED BY:**

Licensee (Legal name of Licensee)
Date:
Address(City State Zip)
Phone
email address
Permit Number

Witness & Authorized Representative of the
Licensor, Michael's International
Date:

Licensee's Initials

## SPECIFICATIONS

The agreed minimum number of "Sets" per week is 3.

Each Scheduled performance day "Set" shall consist of either (a) an eight (8) consecutive hour period for day shift (11:00 a.m. to 7:00 p.m.), (b) a seven (7) consecutive hour period for night shift (7:00 p.m. to 2:00 a.m.), or (c) an eight (8) consecutive hour period for "cross" shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.).

The agreed Rental charges OR "SET FEES" for day shift (11:00 a.m. to 7:00 p.m.) is $5.00 per shift/set.
The agreed Rental charges OR "SET FEES" for night shift (7:00 p.m. to 2:00 a.m.), is $15.00 per shift,
The agreed Rental charges OR "SET FEES" for cross shift (any eight (8) consecutive hour period from 11:00 a.m. to 2:00 a.m.) is $15.00 per shift.

The agreed "loss rental fee" is an amount equal to the above rental charge/Set Fee applicable for the set missed.

The agreed current industry customary Entertainment Fee for a private performance/table dance is $20.00 per dance.

_ARIANALES  PARA NASTRAPA_     Date: _4/25/16_
**Licensee**
Name:

_____     Date: _4-25-16_
**Witness & Authorized Representative of the Licensor**